JOSEPH ALLEN, APPELLANT, v. BOARD OF TRUSTEES, PO-
LICE AND FIREMEN'S RETIREMENT
SYSTEM, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 27, 1989—Decided May 10, 1989.

198

Before Judges J.H. COLEMAN, BAIME and D'ANNUNZIO.

*Robert A. Fagella* argued the cause for appellant (*Zazzali, Zazzali, Fagella & Nowak,* attorneys; *Robert A. Fagella,* on the briefs).

*Juan J. Gonzalez,* Deputy Attorney General, argued the cause for respondent (*Peter N. Perretti, Jr.,* Attorney General; *James J. Ciancia,* Assistant Attorney General, Of Counsel and on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

The issue is whether respondent, Board of Trustees, erred in denying appellant a cost-free transfer from the Public Employees' Retirement System (PERS) to the more beneficial Police and Firemen's Retirement System (PFRS) under a 1986 regulation intended to remedy prior age discrimination. This is the third case we decide today involving the regulation's application.[1]

Appellant was born on March 10, 1928. He commenced public employment on April 2, 1962 as a provisional correction officer assigned to the Bordentown Reformatory, and was permanently appointed to this position on October 23, 1962. He was enrolled in PERS on October 29, 1962, at the age of 34. Appellant's job classification was not eligible for membership in PFRS at that time.

Appellant was promoted to head juvenile officer at the Training School for Boys in Skillman on June 2, 1970. He remained in this title until September 15, 1973, when he was provisionally appointed to the position of assistant supervisor of cottage life (ASCL).

---

[1] The other two cases are *Simon v. Board of Trustees, Police and Firemen's Retirement System,* 233 *N.J.Super.* 186 (App.Div.1989) and *Koschker v. Board of Trustees, Police and Firemen's Retirement System,* 233 *N.J.Super.* 209 (App. Div.1989).

On June 1, 1973, *L.* 1973, *c.* 156 (Chapter 156) went into effect. Section 4 of this act, which is codified at *N.J.S.A.* 43:16A–63, provided at that time in pertinent part:

a. An eligible officer who is a member of the [PERS] shall be permitted to transfer his membership in said fund to the [PFRS] of New Jersey by waiving all rights and benefits which would otherwise be provided by the [PERS]. Any such officer will likewise be permitted to continue his membership in the [PERS] by waiving all rights and benefits which would otherwise be provided by the [PFRS]. Such waivers shall be accomplished by filing forms satisfactory to the New Jersey Division of Pensions, which is responsible for the administration of the [PFRS], within 90 days of the effective date of this act. In the absence of the filing of a timely waiver by any eligible officer his pension status shall remain unchanged and his membership shall not be transferred to the [PFRS].

Chapter 156 established PFRS eligibility for the position of head juvenile officer and permitted individuals who were so employed to transfer their membership from PERS to PFRS regardless of their age as long as a waiver form was filed by August 30, 1973. This was the first time that head juvenile officers were eligible to enroll in PFRS. *See L.* 1973, *c.* 156, § 1. However, the position of assistant supervisor of cottage life continued to be ineligible for PFRS.

On June 12, 1973, the Assistant Director of the Division of Pensions issued a memorandum addressed to all state employees with police powers holding PFRS eligible job titles. The memorandum summarized Chapter 156, compared PERS with PFRS and was to be distributed by the employers with a PFRS election form. The memorandum directed PFRS-eligible employees to complete the election form indicating whether or not they wished to transfer and to return it to their employers prior to August 30, 1973, the last day on which such an election could be made.

Gary Hilton, who was the Assistant Superintendent of the Skillman Training School for Boys in June 1973, testified that he met with the training school's superintendent between June 10 and June 20, 1973, and they agreed that appellant would assume the position of assistant supervisor of cottage life in an "acting" capacity pending the execution of civil service doc-

uments necessary to provisionally appoint appellant to this position. Hilton and the superintendent intended that appellant would assume the ASCL position on a permanent basis if he passed an examination. Hilton recalled having seen appellant functioning as an ASCL by the end of June or the beginning of July 1973. However, it was not until September 15, 1973, that appellant was officially recorded by the Department of Civil Service as having been provisionally appointed to this position.

Appellant recalled having been informed in June 1973 by his supervisor, Mr. Lindenmeyer, that he was to be moved into the ASCL position. Appellant assumed the ASCL duties at that time. He also testified that he was not aware that his civil service record card did not reflect his service as an ASCL during the summer of 1973.

Appellant recalled that in July 1973 he read the June 1973 memorandum issued by the Division of Pensions which summarized Chapter 156. Although appellant wanted to transfer to PFRS he assumed that he was ineligible because the position of ASCL was not PFRS eligible. Thus, appellant never filed a transfer form. Appellant also testified that because he was performing ASCL duties it had not occurred to him that he still held the title of head juvenile officer and, therefore, was eligible to transfer to PFRS.

Frank Balcavage, Chief, Bureau of Enrollment and Purchases, Division of Pensions, testified that even though appellant was functioning in the capacity of an ASCL during the summer of 1973, he would have been eligible to transfer to PFRS under Chapter 156 because he still held the title of head juvenile officer, a PFRS-eligible position. However, Balcavage explained that appellant would have been required to transfer back into PERS in September 1973 when he officially became a provisional ASCL since this job title was not PFRS eligible.

Appellant was permanently appointed an ASCL on June 8, 1974.

Appellant was transferred to the Correctional Institution for Women at Clinton on August 30, 1975, and was permanently appointed a correction lieutenant, a PFRS-eligible position, on November 22, 1975, at age 47. Although job-eligible in 1975, appellant was not age-eligible to join PFRS because employees over 35 were not permitted to join PFRS at that time. *N.J.S.A.* 43:16A–3. Appellant testified that he made a verbal attempt to transfer to PFRS at this time but was informed that he was ineligible because he was over 35 years of age.

Appellant transferred to the Youth Reception and Correction Center, Yardville on October 23, 1976, retaining the position of correction lieutenant. In 1980, petitioner spoke with Yardville's assistant business manager, Mark Albert, and inquired about a transfer to PFRS. As a result, Albert wrote a letter dated January 30, 1980, to Elmer Baggaley, the PFRS Secretary. This letter contained the following:

> Per our telephone conversation I am forwarding to you for your review the preliminary facts regarding an application of transfer from [PERS] to the [PFRS] for Joseph S. Allen....

> As detailed on the attached graphic, Mr. Allen began his employment as a Correction Officer in 1962, under age 35. He remained in an "officer title" until 9/73 at which time there was a title change to Assistant Supervisor of Cottage Life. Although this title was not eligible during the open enrollment period, Mr. Allen continued with the same "officer duties" supervising juvenile officers. Finally in November of 1975 the title of Assistant Supervisor of Cottage Life was changed to Correction Lieutenant again.

> As you can see, although Mr. Allen was working as an officer since 1962, because of an ineligible title he never had the opportunity to join the [PFRS]. Your full consideration in this matter would be greatly appreciated.

Baggaley responded by letter dated February 5, 1980, which stated in pertinent part:

> Very briefly in the subject case, the employee would half [*sic*] to have been in a covered title on July 1, 1973 or come into such title subsequent to that date and met the 35 year age maximum at such time.

> ....

> Therefore, unless the subject employee held a [*sic*] eligible title at a time when he was 35 years or younger, his pension coverage would be with the [PERS] of New Jersey.

> I am sorry I cannot convey more favorable information....

On February 5, 1983, appellant was transferred to Trenton State Prison and was permanently appointed to the title of correction captain, also a PFRS eligible position. Appellant held this title at the time of the hearing.

On July 11, 1984, the Attorney General issued a formal opinion declaring that the statutory hiring age limit of 35 for law enforcement and firefighting personnel was no longer enforceable, due to the Age Discrimination in Employment Act, 29 *U.S.C.A.* § 621 *et seq.* 1 *Op. N.J. Att'y Gen.* (1984).[2] Based on this opinion, the Division of Pensions ceased enforcing the maximum age requirement of 35 for persons enrolling in PFRS contained in *N.J.S.A.* 43:16A-3. This change in enrollment policy was prospective only.

On April 26, 1985, *L.* 1985, *c.* 155 (Chapter 155) went into effect. It gave PERS members who were eligible to transfer to PFRS under Chapter 156, but who did not elect to do so, an additional opportunity to transfer regardless of their age. This statue provided in pertinent part:

Notwithstanding any provision to the contrary of section 4 of P.L. 1973, c. 156 (C. 43:16A-63), or of any other law, any officer who was on June 1, 1973, *a member of the [PERS], and who was on that date eligible to transfer such membership to the [PFRS] and did not elect to so transfer in the manner provided by section 4 of P.L.1973, c. 156,* and who has continued since that date as a member of the [PERS], shall be permitted to transfer his membership to the [PFRS] by waiving all rights and benefits which would otherwise be provided by the [PERS] and by making a lump sum payment into the [PFRS] Annuity Savings Fund of the amount of the difference between the contribution which was paid as a member of the [PERS] and the contribution that would

[2]Congress enacted the Age Discrimination in Employment Act in 1967, which, among other things, barred discrimination by an employer because of age with respect to the terms, conditions, or privileges of employment, except where age was "a bona fide occupational qualification." 19 *U.S.C.A.* § 623(a)(1) and (f)(1). It also forbade the enforcement of terms of any pension plan which were "a subterfuge to evade the purposes of" the Act. 29 *U.S.C.A.* § 623(f)(2). The Act was amended in 1974 to define "employer" to include states or their political subdivisions and agencies. 29 *U.S.C.A.* § 630(b)(2). Because of questions under the Tenth Amendment, however, not until 1983 was it settled that the Act governed the states; the Supreme Court so ruled in *EEOC v. Wyoming,* 460 *U.S.* 226, 103 *S.Ct.* 1054, 75 *L.Ed.*2d 18 (1983).

have been required if he had been a member of the [PFRS] since the date of last enrolling in the [PERS]. The officer shall also be liable for any additional payment to the retirement system that the employer would have been required to make on behalf of the member for the purchase of such credit.... Any officer shall likewise be permitted to continue his membership in the [PERS] by waiving all rights and benefits which would otherwise be provided by the [PFRS]. These waivers shall be accomplished by filing forms satisfactory to the Division of Pensions within 90 days of the effective date of this act. In the absence of the filing of a timely waiver by the eligible officer as provided herein his pension status shall remain unchanged and his membership shall not be transferred to the [PFRS].
[*L.* 1985, *c.* 155, § 1]

In May 1985, the Division of Pensions issued a memorandum addressed to PERS members who were eligible to transfer to PFRS pursuant to Chapter 155. The Division requested their employers to distribute the memorandum, a comparison of benefits between the two retirement systems and an election statement to all employees who were eligible to transfer. The memorandum set forth the eligibility requirements and directed eligible members to complete an election statement indicating whether or not they wished to transfer and return this statement to their employer prior to July 25, 1985.

On July 23, 1985, appellant signed an election form in accordance with Chapter 155, wherein he indicated his desire to transfer to PFRS. Appellant maintained that he gave the executed form to someone in the personnel department at the central office of the Department of Corrections. Appellant never received a response to his application. He did not bother to inquire of his employer or the Division of Pensions regarding what had happened to his application since he just assumed that he was ineligible.

A memorandum dated August 26, 1985 from Robert Parsons, Client Relations, Division of Pensions, was placed in appellant's membership file. This memorandum indicates that although appellant was eligible to transfer, the Division received no election form from him. Hence, no transfer was effectuated for appellant under Chapter 155.

Balcavage testified that although he subsequently requested information from the Department of Corrections as to whether

the election form which appellant signed on July 23, 1985 had been sent to the Division of Pensions, no confirmation to this effect was ever received from appellant's employer.

In February 1986, Douglas Forrester, Director of the Division of Pensions, issued a memorandum to the certifying officers of PFRS entitled "Persons Previously Denied Enrollment in the [PFRS] Because of the Entry Age Limit." Forrester stated that he planned to adopt a regulation to provide for the retroactive elimination of the PFRS entry age limit to correct what he perceived to be inequitable treatment of individuals who had been denied entry into PFRS because they were over 35 years of age prior to the date on which the age limit was deemed invalidated. He explained that "[t]his means that a person in [a] position covered by the retirement system who had been denied entry because of the entry age limit will now be permitted to transfer into the system" without cost. The memo indicated that persons previously denied entry because of the entry age limit who wanted to transfer to PFRS were required to file an interfund transfer form by June 30, 1986 and that the transfers were scheduled to take effect on October 1, 1986. The certifying officers were requested to notify their employees about this policy determination.

Thereafter, the policy contained in the 1986 memo was incorporated in *N.J.A.C.* 17:1–12.7 which went into effect on June 16, 1986. This regulation provides in part that "[a]ny person whose position is included under the definition of 'policeman or fireman' under Section 1 of P.L.1944, *c.* 255 (*N.J.S.A.* 43:16A–1 *et seq.*) who was denied enrollment in the [PFRS] because of the entry age limit under Section 3 of this law, may transfer from the [PERS] to the [PFRS]. The transfer application shall be filed no later than June 30, 1986. The transfer shall take effect on October 1, 1986."

Appellant executed an application for interfund transfer on March 14, 1986 and a PFRS enrollment application on March 17, 1986.

By memorandum dated May 6, 1986, Balcavage, who was responsible for determining whether individuals who submitted transfer applications were eligible for a transfer in accordance with the 1986 memo, advised appellant that he was denying his application for a transfer to PFRS. Balcavage stated that the 1986 memo offered the right of transfer to individuals who were denied previous membership in PFRS only because they were over age 35. Since petitioner had previously been eligible to transfer in 1973 under Chapter 156 and in 1985 under Chapter 155 and had elected not to do so, he was not eligible for a transfer under *N.J.A.C.* 17:1–12.7.

Balcavage testified that he discussed the implementation of the 1986 memo with the "top management" of the Division of Pensions and a policy decision was made among these individuals that the memo would be interpreted as only allowing those individuals to transfer to PFRS who, solely because of their age, had never had a prior opportunity to transfer. Thus, individuals who had been given prior legislative opportunities to transfer regardless of their age were not eligible. According to Balcavage, this was the policy that the director of the division wanted implemented. Balcavage admitted that this interpretation of the 1986 memo was facially at variance with the wording of the memo itself.

Balcavage followed this policy in his review of the more than 900 transfer applications that were submitted as a result of the 1986 memo. Over 200 applications were rejected because these individuals had previous transfer opportunities. Balcavage made his determination as to whether or not these applicants were eligible to transfer before *N.J.A.C.* 17:1–12.7 went into effect. He acknowledged that this regulation does not contain the limitation that he placed on the 1986 memo.

Balcavage testified that had appellant elected to transfer to PFRS in June 1973 under Chapter 156, he would have been required to withdraw his membership in September 1973 when he acquired the ineligible title of ASCL. Consequently, he would not have been able to transfer back into PFRS in 1985

under Chapter 155 since this act only granted eligibility to those persons who had been eligible to transfer under Chapter 156 *but had elected not to do so.* Balcavage acknowledged that under this scenario, appellant would never have been eligible to transfer back into PFRS, even under his interpretation of the 1986 memo, since appellant had had a prior opportunity to transfer in 1973.

Appellant appealed the denial of his transfer application to the PFRS Board of Trustees which upheld the denial. The board's initial reasoning was that appellant had been in the ineligible title of ASCL when Chapter 156 went into effect. Thus, appellant had not been denied entry into PFRS because of age. This statute also rendered him ineligible for transfer under Chapter 155. However, the board later amended its decision to indicate that appellant's request for a transfer was being denied "because at no time was he denied membership in the PFRS only because he was overage without any other opportunity to transfer" in view of the fact that he had been eligible for a transfer under Chapter 156 and 155.

Appellant filed a timely notice of appeal.

An administrative agency's interpretation of its regulations is entitled to substantial weight. *Petition of Adamar of New Jersey,* 222 *N.J.Super.* 464, 469 (App.Div.1988); *New Jersey Builders Assoc. v. Department of Environmental Protection,* 169 *N.J.Super.* 76, 89–90 (App.Div.1979), certif den., 81 *N.J.* 402 (1979); *In re Plainfield–Union Water Co.,* 57 *N.J.Super.* 158, 177 (App.Div.1959). "It is the intention with which the rule or regulation was adopted that is controlling." *Ibid.* *N.J.A.C.* 17:1–12.7 was intended to provide a remedy to victims of prior age discrimination. This intent is apparent from the 1986 policy memorandum, the statement of the rule's purpose and effect, 18 *N.J.R.* 627, and the regulation's language which clearly stated that it was applicable to persons who were "denied enrollment ... because of the entry age limit...."

The issue before the board was whether appellant had been denied enrollment due to the age limit. The issue before this

court is whether the board's determination was arbitrary, unreasonable or unsupported by credible evidence in the record. *In re Suspension of Heller*, 73 *N.J.* 292 (1977); *Campbell v. Department of Civil Service*, 39 *N.J.* 556 (1963); *East Windsor Reg'l Bd. of Ed. v. State Bd. of Ed.*, 172 *N.J.Super.* 547 (App.Div.1980).

█ We conclude that appellant's opportunity to transfer to PFRS in 1973 should have been disregarded by the board. It was an illusory opportunity because appellant's job status was ambiguous. Although he held the title of head juvenile officer in June 1973, he was working as an ASCL and awaiting execution of the document necessary to formally effect a provisional ASCL appointment. Moreover, had appellant transferred to PFRS in the summer of 1973 as a head juvenile officer, he would have become PFRS ineligible in September 1973 upon receipt of his ASCL appointment.

We conclude, therefore, that appellant's case should have been judged from 1975 when, at age 47, he was appointed to the PFRS-eligible position of correction lieutenant. Although job-eligible, he was not age eligible, and, unlike the appellants in *Simon* and *Koschker* (see fn. 1), he did not have the benefit of an age-correction mechanism provided simultaneously with his assumption of a job-eligible position. Thus, from 1975 to the enactment of Chapter 155 in 1985, appellant was the victim of the age discrimination which *N.J.A.C.* 17:1–12.7 was intended to remedy.

We also conclude that the window of opportunity provided by Chapter 155 was not a sound basis for denial of appellant's transfer application. As previously indicated, appellant was clearly precluded from joining PFRS in 1975 because of his age as soon as he became job-eligible. Furthermore, Chapter 155, by its terms, applies only to PERS members who were eligible to transfer to PFRS on June 1, 1973, under Chapter 156 but did not elect to do so. Circumstances peculiar to appellant rendered the Chapter 156 transfer problematic and illusory. Final-

ly, a Chapter 155 transfer would not have been cost free. Appellant would have had to pay into PFRS the difference between his PERS contribution and the contribution he would have made to PFRS during his prior service as well as the additional payments which would have been required of his employer. Although we do not know the exact cost in this case, it would have been substantial. The amount involved in *Simon* exceeded $50,000, and in *Koschker* each appellants' contribution would have exceeded $20,000. In the present case, unlike *Simon* and *Koschker*, ten years of prior PERS service between 1975 and 1985 was proximately caused by age discrimination, thereby adding to appellant's transfer cost under Chapter 155.

We are satisfied, therefore, that appellant was a victim of PFRS age discrimination commencing with his appointment as correction lieutenant in 1975, that he fell within the class of employees intended to be benefited by *N.J.A.C.* 17:1–12.7 and that the Board's rejection of his transfer application was arbitrary and not supported by the evidence.

Reversed.