ELIZABETH KOSCHKER, MARY BOGLI, ELIZABETH BACON, JOSEPH FARLEY, AND DOROTHY ROBINSON, PLAINTIFFS-APPELLANTS, AND JEAN MESSIG, ESTHER WILLEVER AND EMANUEL NEIMAN, PLAINTIFFS, v. BOARD OF TRUSTEES, POLICE AND FIREMEN'S RETIREMENT SYSTEM, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted January 9, 1989—Decided May 10, 1989.

210

Before Judges J.H. COLEMAN, BAIME and D'ANNUNZIO.

*Schaff, Motiuk, Gladstone, Moeller* and *Reed,* attorneys for appellants (*Robert B. Reed,* Of Counsel; *Walter G. Luger,* on the brief).

*Cary Edwards,* Attorney General, attorney for respondent (*Michael J. Haas,* Deputy Attorney General, Of Counsel; *Juan J. Gonzalez,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

The issue is whether respondent, Board of Trustees, erred in denying appellants cost-free transfers from the Public Employees' Retirement System (PERS) to the more beneficial Police and Firemen's Retirement System (PFRS) under a 1986 regulation intended to remedy prior age-discrimination. This is the third case we decide today involving the regulation's application.[1]

Appellants, employed at the Clinton Correctional Institution for Women, are long-time members of the Public Employees' Retirement System (PERS). Appellants enrolled in PERS between 1962 and 1971 rather than in the Police and Firemen's Retirement System (PFRS) because their job titles were not covered by PFRS at that time. Only a statutorily defined "policeman or fireman" is eligible for PFRS enrollment. *N.J.S. A.* 43:16A–1(2). At the time appellants were initially employed, enrollment in PFRS was limited to employees who were 35 years old or younger.

---

[1] The other two cases are *Simon v. Board of Trustees, Police and Firemen's Retirement System,* 233 *N.J.Super.* 186 (App.Div.1989) and *Allen v. Board of Trustees, Police and Firemen's Retirement System,* 233 *N.J.Super.* 197 (App.Div. 1989).

In 1973, the Legislature expanded the list of job titles eligible for PFRS enrollment to include Cottage Officers and Head Cottage Officers, appellants' job titles. *L.* 1973, *c.* 156, § 1 (codified at *N.J.S.A.* 43:16A–1(2)). Employees, like appellants, then enrolled in PERS were offered a one-time opportunity to transfer their retirement fund membership to PFRS without cost and without regard to age. *L.* 1973, *c.* 156, § 4 (codified at *N.J.S.A.* 43:16A–63a). To effect the transfer, employees were required to waive their rights to PERS within 90 days of the statute's effective date. *N.J.S.A.* 43:16A–63. An eligible employee who failed to make a timely waiver would lose the opportunity to transfer his membership to PFRS and would remain a member of PERS.[2]

Chapter 156 did not, however, abolish the 35 year entry-age limitation; it was merely suspended. After the 90 day "window of opportunity" elapsed, enrollment in PFRS was again limited to employees 35 years old or younger.

All but one of the appellants were over 35 at the time of the 1973 enactment. Although all were eligible, none waived PERS membership within the 90 day period. Having failed to elect PFRS membership, appellants remained enrolled in PERS.

---

[2]Following the 1973 enactment, *N.J.S.A.* 43:16A–63 provided:

An eligible officer who is a member of the Public Employees' Retirement System shall be permitted to transfer his membership in said fund to the Police and Firemen's Retirement System of New Jersey by waiving all rights and benefits which would otherwise be provided by the Public Employees' Retirement System. Any such officer will likewise be permitted to continue his membership in the Public Employees' Retirement System by waiving all rights and benefits which would otherwise be provided by the Police and Firemen's Retirement System. Such waivers shall be accomplished by filing forms satisfactory to the New Jersey Division of Pensions, which is responsible for the administration of the Police and Firemen's Retirement System, within 90 days of the effective date of this act. In the absence of the filing of a timely waiver by any eligible officer his pension status shall remain unchanged and his membership shall not be transferred to the Police and Firemen's Retirement System.

In 1985, the Legislature again provided all eligible employees (*i.e.*, those with eligible job titles) who had not elected to transfer to PFRS in 1973 an opportunity to waive their membership in PERS and enroll in PFRS. *L.* 1985, *c.* 155, § 1. In contrast to the cost-free transfer offered in 1973, the 1985 enactment required a lump sum payment from each transferring employee representing the difference between the contribution paid as a member of PERS and the contribution that would have been paid as a member of PFRS since 1973. In addition, each transferring employee was required to pay that sum the employer would have had to pay since 1973 under PFRS on behalf of the transferring employee. As under the 1973 enactment, eligible employees were required to waive membership in PERS within 90 days of the act's effective date to make a transfer to PFRS. Again, the failure to make a timely waiver would result in no pension membership change.[3]

---

[3]The 1985 enactment, *L.* 1985, *c.* 155, § 1 provides:

Notwithstanding any provision to the contrary of section 4 of P.L.1973, c. 156 (C. 43:16A–63), or any other law, any officer who was on June 1, 1973, a member of the Public Employees' Retirement System, and who was on that date eligible to transfer such membership to the Police and Firemen's Retirement System and did not elect to so transfer in the manner provided by section 4 of P.L.1973, c. 156, and who has continued since that date as a member of the Public Employees' Retirement System, shall be permitted to transfer his membership to the Police and Firemen's Retirement System by waiving all rights and benefits which would otherwise be provided by the Public Employees' Retirement System and by making a lump sum payment into the Police and Firemen's Retirement System Annuity Savings Fund of the amount of the difference between the contribution which was paid as a member of the Public Employees' Retirement System and the contribution that would have been required if he had been a member of the Police and Firemen's Retirement System since the date of last enrolling in the Public Employees' Retirement System. The officer shall also be liable for any additional payment to the retirement system that the employer would have been required to make on behalf of the member for the purchase of such credit; this payment may be made in regular monthly installments or in a lump sum, as the officer may elect, and pursuant to rules and regulations as may be promulgated by the Division of Pensions. Any such officer shall likewise be permitted to continue his membership in the Public Employees' Retirement System by waiving all rights and benefits which would otherwise

The Division of Pensions sent an explanatory memo to all PERS members eligible for a transfer under the 1985 enactment. However, because the average transfer cost per appellant was $20,000, none elected to waive PERS membership and enroll in PFRS.

Thereafter, the present case evolved from the impact of a federal anti-discrimination statute on state employment practices and benefits. In 1967 Congress enacted the Age Discrimination in Employment Act (hereinafter ADEA), 29 *U.S.C.A.* § 621 *et seq.*, which, among other things, barred discrimination by an employer because of age with respect to the terms, conditions, or privileges of employment, except where age was "a bona fide occupational qualification." 29 *U.S.C.A.* § 623(a)(1) & (f)(1). It also forbade enforcement of the terms of any pension plan which were "a subterfuge to evade the purposes of the Act." 29 *U.S.C.A.* § 623(f)(2). The ADEA was amended in 1974 to define "employer" to include states or their political subdivisions and agencies. 29 *U.S.C.A.* § 630(b)(2). Because of questions under the Tenth Amendment, however, not until 1983 was it settled that the ADEA applied to state governments. *EEOC v. Wyoming*, 460 *U.S.* 226, 103 *S.Ct.* 1054, 75 *L.Ed.*2d 18 (1983). *See Boylan v. State*, 222 *N.J.Super.* 313, 320 (App.Div.1988), certif. granted 111 *N.J.* 648 (1988).

On July 11, 1984, New Jersey's Attorney General issued a formal opinion acknowledging ADEA's applicability to the states and declaring unenforceable the entry-age limit of 35 for law enforcement and firefighting personnel. 1 *Op.N.J.Atty. Gen.* (1984).

---

be provided by the Police and Firemen's Retirement System. These waivers shall be accomplished by filing forms satisfactory to the Division of Pensions within 90 days of the effective date of this act. In the absence of the filing of a timely waiver by the eligible officer as provided herein his pension status shall remain unchanged and his membership shall not be transferred to the Police and Firemen's Retirement System.

In February 1986, Douglas Forrester, Director of Division of Pensions, issued a memo declaring that the maximum age requirement for entry into PFRS was retroactively eliminated and that any person previously denied enrollment in PFRS because of the entry age limit could transfer to PFRS at no cost.[4] The Director's memo was subsequently codified at *N.J. A.C.* 17:1–12.7:

> Any person whose position is included under the definition of "policeman or fireman" under Section 1 of P.L.1944, c. 255 (*N.J.S.A.* 43:16A–1 *et seq.*) who was denied enrollment in the Police and Firemen's Retirement System because of the entry age limit under Section 3 of this law, may transfer from the Public Employees' Retirement System to the Police and Firemen's Retirement System. The transfer application shall be filed no later than June 30, 1986.

All appellants applied for the cost-free transfer to PFRS in a timely manner. In May and June 1986, the Division of Pensions notified all appellants that their requests were denied. The denial letters, signed by Frank Balcavage, Chief of the Enrollment and Purchase Bureau, state:

> Mr. Forrester's memorandum clearly stipulates we are offering the right of transfer to the Police and Firemens' Retirement System to individuals who were denied previous membership in the PFRS *only* because they were over age 35. Any individual who was given previous opportunities to transfer into the PFRS and waived his right to transfer is not eligible, at this time, to transfer because of the age factor. You were previously eligible to transfer under the provisions of Chapter 156, P.L.1973 and Chapter 155, P.L.1985. You did not elect to transfer your membership.
>
> Accordingly, you are denied the right to transfer into the PFRS based on the age factor. Therefore, you must continue your membership in the Public Employees' Retirement System. (Emphasis in original).

In September, defendant the Board of Trustees, PFRS reviewed Balcavage's decision and amended its reasons for the denial, notifying appellants by letter that:

> Following the Board's review, it was their determination and decision to deny your request to transfer to the PFRS as a result of a policy change regarding individuals who were previously denied enrollment because of reaching maximum age of 35 years of age. The Board considered that you were not denied

---

[4] In his memorandum, Director Forrester concluded that the 35 year age limit should be eliminated retroactively to remedy the inequity to those denied PFRS admission because they were over 35.

enrollment in the PFRS because of age since you were eligible to transfer to the PFRS under Chapter 156, P.L.1973 and you did not exercise your option at the time of the passage of the law on June 1, 1973. Furthermore, you were also eligible to transfer under Chapter 155, P.L.1985. *Therefore, the Board rejects your transfer to the PFRS since you were previously eligible to transfer under the provisions of Chapter 156, P.L.1973 and Chapter 155, P.L.1985.* (Emphasis supplied).

In October 1986, appellants requested a review of the board's decision, and the matter was referred to ALJ Lavery as a contested case. At the hearing, Frank Balcavage reiterated that it was the intent of the Division of Pensions, in issuing the 1986 memo, to forbid membership transfers to anyone who had an opportunity to enroll in PFRS under the 1973 and 1985 enactments. Nevertheless, in September 1987, Judge Lavery recommended that appellants' requests to transfer their membership from PERS to PFRS, pursuant to Forrester's 1986 memo and *N.J.A.C.* 17:1–12.7, be granted.

Judge Lavery concluded that appellants were entitled to PFRS membership under "the unequivocal language of the rule." Although respondent may have intended that appellants be exempted from the opportunity to transfer, nothing in the 1986 memo or in *N.J.A.C.* 17:1–12.7 itself expressed that intent. Judge Lavery wrote:

The proofs are plain that the Director, in enacting this rule, acted in the perceived best interests of law enforcement personnel whom he viewed as being inequitably treated. In his underlying February 1986 policy memo he sought to provide a remedy, while still preserving the fiscal integrity of the fund. He did so after careful consideration and consultation with top-rank, experienced staff. The above rule [*N.J.A.C.* 17:1–12.7] is that "general administrative regulation" which was promised in this memo. *However, while there is no doubt in view of Mr. Balcavage's completely credible testimony, that those personnel exposed to "windows of opportunity" by the Acts were meant to be excluded by the Director from the benefits of both policy and rule, neither the policy memo nor the rule articulates that intent. More importantly, it cannot be "interpreted" to do so, as a matter of law.*

.     .     .     .     .     .     .     .

The "clear and concise explanation of the purpose and effect of the rule" was initially set out in the *New Jersey Register* on April 7, 1986, at 18 *N.J.R.* 627.... This is the Division's expression of legislative intent to the public. Conspicuous by its absence is any statement of the Director's intent that

persons who were given an opportunity to transfer to P & FRS under the two Acts in 1973 and 1985 would not be covered by the rule. There is no hint to the public that such persons would be treated as a separate class, carved from all who were denied entry because of the age limit.

．　　．　　．　　．　　．　　．　　．　　．

While the Division places great weight on its undisputed intention, it is obvious that no expression of that purpose is present in the rule. Neither is it articulated in the legislative history, comprised of the February 1986 policy memo and the preamble to the rule proposal in April of 1986. Since the onset of the New Jersey Administrative Procedure Act, our courts have had occasion to strike down regulations not supported by the "plain reading" of a statute or rules, especially where regulated individuals have had no notice of a new policy. *DEP v. Stavola,* 103 *N.J.* 425, 437 (1986)....

Here, the record reflects that, *before the Division sought to provide a retroactive remedy* under authority of *EEOC v. Wyoming,* and the two Attorney General's opinions described above, *petitioners were prohibited from transfer to P & FRS because of age....* Since all petitioners inarguably were over the age of 35 during at least part of the period that the Rule and policy memo are meant to address, they are eligible for the remedy provided under *N.J.A.C.* 17:1–12.7.... *The "opportunities" provided by the Acts of 1973 and 1985 do nothing to change the fact of petitioners' exclusion because of an entry age requirement....* (Emphasis supplied).

In January 1988, the board rejected ALJ Lavery's recommendation and affirmed its previous decision to deny appellants' requests to transfer. The board repeated that appellants had not been denied membership into PFRS solely on the basis of age since the 1973 and 1985 enactments gave appellants the opportunity to transfer regardless of their ages.

Appellants filed a timely notice of appeal.

█ An administrative agency's interpretation of its regulations is entitled to substantial weight. *Petition of Adamar of New Jersey,* 222 *N.J.Super.* 464, 469 (App.Div.1988); *New Jersey Builders Assoc. v. Department of Environmental Protection,* 169 *N.J.Super.* 76, 89–90 (App.Div.1979); *In re Plainfield–Union Water Co.,* 57 *N.J.Super.* 158, 177 (App.Div.1959). "It is the intention with which the rule or regulation was adopted that is controlling." *Ibid.* The board's decision denying appellants a free transfer implemented the clear intent of *N.J.A.C.* 17:1–12.7 to provide a remedy to victims of prior age discrimination. This intent is apparent from the 1986 policy

memorandum, the statement of the rule's purpose and effect, 18 *N.J.R.* 627, and the regulation's language which clearly stated that it was applicable to persons who were "denied enrollment ... because of the entry age limit...."

The issue before the board was whether appellants had been denied enrollment due to the age limit. The board's determination was neither arbitrary nor unreasonable and was supported by substantial credible evidence in the record. *In re Suspension of Heller,* 73 *N.J.* 292 (1977); *Campbell v. Department of Civil Service,* 39 *N.J.* 556 (1963); *East Windsor Reg'l Bd. of Ed. v. State Bd. of Ed.,* 172 *N.J.Super.* 547 (App.Div.1980).

All appellants were employed at the correctional institution prior to 1973. They could not join PFRS before 1973 because their job classifications were not included in that retirement system. Consequently, appellants were not age discrimination victims prior to 1973. In that year, appellants job classifications were included in PFRS and simultaneously they were afforded the opportunity to transfer their pension membership, without cost, and regardless of age, from PERS to PFRS. Appellants failed to take advantage of this opportunity. They were given a second transfer opportunity in 1985, but at a price. Their many years of PERS service was the obstacle preventing them from joining PFRS in 1985, not their ages. Protecting their substantial PERS service in 1985 would have cost each appellant over $20,000, and each appellant made a business decision to forego PFRS membership. Although 12 years of PERS service had accrued between 1973 and 1985, thereby adding to the transfer cost, these additional PERS years were the proximate result of appellants' failure to transfer in 1973. Thus, the record supports the board's determination that appellants were not denied enrollment because of their ages, and that determination should not be disturbed.

Appellants also contend that they did not receive personal notice of their right to a free transfer in 1973 and, therefore, cannot be deemed to have waived that right. We conclude, as

did the ALJ and the board, that this contention is without merit. The board had notified appellants' employer, whose personnel officer is the "certifying agent" under *N.J.A.C.* 17:2–1.5, of the 1973 amendment and transfer opportunity, though it had no obligation to do so. *In re Krah*, 130 *N.J.Super.* 366 (App.Div. 1974). Clearly, the board had no obligation to personally notify each affected PERS member. *Ibid. Cf. N.J.S.A.* 18A:66–7 which requires notice "in care of the last employer" of a teacher whose pension membership is about to expire. *Gladden v. Pub. Emp. Retirement System Trustee Bd.*, 171 *N.J.Super.* 363 (App.Div.1979), cited by appellants, is inapposite.

Affirmed.