233 N.J. Super. 186 (1989)
558 A.2d 490
WILLIAM J. SIMON, PETITIONER-APPELLANT,
v.
BOARD OF TRUSTEES, POLICE AND FIREMEN'S RETIREMENT SYSTEM, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 5, 1988.
Decided May 10, 1989.
*187 Before Judges J.H. COLEMAN, BAIME and D'ANNUNZIO.
Gruccio, Pepper, Giovinazzi & DeSanto, attorneys for appellant (E. Edward Bowman, Of Counsel and on the brief).
Cary Edwards, Attorney General of New Jersey, attorney for respondent (James J. Ciancia, Assistant Attorney General, Of Counsel; Juan J. Gonzalez, Deputy Attorney General, on the brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
The issue is whether respondent, Board of Trustees, erred in denying appellant a cost-free transfer from the Public Employees' Retirement System (PERS) to the more beneficial Police and Firemen's Retirement System (PFRS) under a 1986 regulation intended to remedy prior age-discrimination. This is the *188 third case we decide today involving the regulation's application.[1]
Petitioner, William J. Simon, was a Camden County Freeholder from January 1973 until January 1980, when he became Sheriff of Camden County. He enrolled in the Public Employees' Retirement System (PERS) in May 1973 and continued as a PERS member when he became sheriff. Before 1984, county sheriffs were eligible to join PERS only. By amendment to N.J.S.A. 43:16A-1 effective January 9, 1984, "county sheriff" was added to the list of employees eligible to join the Police and Firemen's Retirement System (PFRS). L. 1983, c. 439, § 1.
In the same amendment the Legislature changed the PFRS law to permit an incumbent county sheriff to transfer from PERS to PFRS under some circumstances. The two new sections read as follows:
No county sheriff shall qualify for membership in the Police and Firemen's Retirement System of New Jersey pursuant to this amendatory and supplementary act if he has reached the age of 37 years on the date of his application for membership. In calculating his age for purposes of eligibility for membership, a person may subtract the time spent in active service in any branch of the United States military service. [N.J.S.A. 43:16A-3.6]
Any officer eligible to become a member pursuant to the amendatory provisions of this act who is enrolled in the Public Employees' Retirement System (P.L. 1954, c. 84, C. 43:15A-1 et seq.) or any county pension fund established under Title 43 of the Revised Statues shall be permitted to transfer membership from the aforesaid system or fund to the Police and Firemen's Retirement System of New Jersey in accordance with the provisions of P.L. 1973, c. 156 (C. 43:16A-62 et seq.) and upon a lump sum payment into the Police and Firemen's Retirement System annuity savings fund of the amount of the difference between the contribution which was paid as a member of the Public Employees' Retirement System or county pension fund and the contribution that would have been required if he had been a member of the Police and Firemen's Retirement System since the date of last enrolling in the Public Employees' Retirement System or a county pension fund. In addition, the employee shall be liable for any payment to the retirement system that the employer would have been required to make on behalf of the member for the purchase of such *189 credit; this payment may be made in regular monthly installments or in a lump sum, as the employee may elect, and pursuant to rules and regulations as may be promulgated by the Division of Pensions.
Whenever in P.L. 1973, c. 156 a period of time is set which is to be calculated from the effective date of said act, such time shall be calculated from the effective date of this amendatory and supplementary act for the purposes hereof. [N.J.S.A. 43:16A-3.7]
As stated in N.J.S.A. 43:16A-3.7, this special category of transfer for county sheriffs was to be carried out under L. 1973, c. 156, the pertinent provision of which is codified at N.J.S.A. 43:16A-63. That section requires such a transferee to waive his rights and benefits under PERS by filing a waiver within 90 days of the date of that act (June 1, 1973). Absent such a timely waiver, "his pension status shall remain unchanged and his membership shall not be transferred to the Police and Firemen's Retirement System." N.J.S.A. 43:16A-63a.
By the last paragraph of N.J.S.A. 43:16A-3.7, the 90-day time limit of N.J.S.A. 43:16A-63a was incorporated into N.J.S.A. 43:16A-3.7, such that any transfer requests (with waiver) had to be filed within 90 days of January 9, 1984, or by April 9, 1984.
Thus, the 1984 amendments permitted incumbent county sheriffs to transfer from PERS to PFRS if three conditions were met: (1) the applicant was under 37 years old (after military service was subtracted); (2) the applicant paid to PFRS the sum stipulated in N.J.S.A. 43:16A-3.7; and (3) the application was filed by April 9, 1984.
On some unspecified date in early 1984,[2] petitioner applied for a transfer from PERS to PFRS, citing N.J.S.A. 43:16A-3.6 & -3.7. Having been born on July 14, 1946, petitioner was 37 years old at the time he applied. Hence he failed to meet the *190 under-37 age limit of N.J.S.A. 43:16A-3.6. But apparently petitioner took advantage of the military-service reduction allowed by that statute, thereby becoming age-eligible. Of the 21 incumbent county sheriffs, appellant was the only one age-eligible for transfer.
By letter of July 9, 1984 the Division of Pensions notified petitioner that the cost of his transfer, pursuant to the formula of N.J.S.A. 43:16A-3.7, would be $54,313.71, $11,642.71 of which would have to be paid in full within 30 days. Based on the high cost of transfer, petitioner did not transfer. Petitioner took no further action at that time.
Another section of the PFRS law, enacted in 1968, set a 35-year entry-age limit on acceptance of new employees into the PFRS system. N.J.S.A. 43:16A-3. After January 9, 1984, by virtue of the amendment to N.J.S.A. 43:16A-1 (discussed above) adding county sheriffs to the list of PFRS eligibles, the 35-year entry age applied to county sheriffs as well. By the operation of both statutes, therefore, there was a 37-year entry-age on transferees from PERS during the 90-day period allowed by N.J.S.A. 43:16A-3.7, and a general 35-year entry-age limit on membership for new employees.
On July 11, 1984, the Attorney General issued a formal opinion acknowledging that the Age Discrimination in Employment Act (hereafter ADEA), 29 U.S.C.A. § 621 et seq., applied to the states, EEOC v. Wyoming, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), and declaring that the statutory entry-age limit of 35 for law enforcement and firefighting personnel was no longer enforceable. 1 Op. N.J.Att'y Gen. (1984). Based on this opinion, the Division of Pensions ceased enforcing the 35-year entry-age limit of N.J.S.A. 43:16A-3.
In February 1986 Douglas R. Forrester, Director of the Division of Pensions, issued a memorandum to PFRS's officers in which he noted that the entry-age limit of 35 was no longer enforceable, by reason of "federal court decisions [EEOC v. Wyoming, supra] and opinions of our own Attorney General's *191 Office concerning the applicability of the Federal Age Discrimination in Employment Act to the states." Acknowledging the unfairness to those who had been denied the right to transfer into PFRS because of age, Forrester opined that the elimination of the entry-age limit should be retroactive. Accordingly, he declared his intention to promulgate a regulation permitting those who had been denied entry because of the entry-age limit of 35 to transfer into PFRS without cost to the employee or his employer. He decreed that requests for this special category of transfer had to be filed by June 30, 1986.
The foregoing plan was codified as N.J.A.C. 17:1-12.7, effective June 16, 1986:
Any person whose position is included under the definition of "policeman or fireman" under Section 1 of P.L. 1944, c. 255 (N.J.S.A. 43:16A-1 et seq.) who was denied enrollment in the Police and Firemen's Retirement System because of the entry age limit under Section 3 of this law [N.J.S.A. 43:16A-3], may transfer from the Public Employees' Retirement System to the Police and Firemen's Retirement System. The transfer application shall be filed no later than June 30, 1986. The transfer shall take effect on October 1, 1986. If a person files a transfer application before June 30, 1986, and dies or retires before October 1, 1986, the transfer shall be effective and the person or his beneficiaries shall receive the retirement or death benefits provided under the Police and Firemen's Retirement System. [Emphasis supplied.]
The purpose of the regulation was described by the Division in the statement accompanying the proposed rule:
Summary
The purpose of the proposed new rule is to provide that the elimination of the entry age limit for enrollment in the Police and Firemen's Retirement System by the Federal Age Discrimination in Employment Act shall be applied retroactively.
The Federal Age Discrimination Law was held to be applicable to the states by federal court decisions. Prospective application of this change in the law has resulted in a substantial inequity to persons who were denied entry into the retirement system before the court decisions. These persons continue to be denied the benefits of the retirement system designed for their type of work while newly hired employees receive such benefits. The proposed new rule corrects this inequity by permitting these persons to transfer into the Police and Firemen's Retirement System.

*192 Social Impact
The proposed new rule will benefit persons denied entry into the Police and Firemen's Retirement System because of the entry age limit. The new rule will provide them with the same pension benefits as persons hired after the entry age limit was eliminated. [18 N.J.R. 627 (1986)]
In reaction to Forrester's memorandum, on March 4, 1986, petitioner applied for a cost-free transfer from PERS to PFRS. By letter of March 13, 1986, Forrester disclaimed any authority "to authorize a transfer once it has been rejected." He added that his February 1986 memorandum "was strictly limited to the issue of age discrimination." Petitioner wrote a letter to Forrester disagreeing with his position, and Forrester reiterated his ruling in a letter dated May 27, 1986.
On February 19, 1987 petitioner, now represented by counsel, appealed Forrester's denial to the PFRS board of trustees. The appeal was denied by letter of March 30, 1987:
... It was the Board's decision that Mr. Simon was not denied entry into the PFRS because of age. The Board recognizes that special legislation was enacted to provide your client the opportunity to transfer under Chapter 439, P.L. 1983. However, Sheriff Simon did not exercise his right to transfer at that time because of the cost factors. The Board believes that there was no issue of age discrimination since the legislators enacted a special law to provide him [the opportunity] to transfer into the PFRS during 1983.
On May 13, 1987 petitioner requested that the PFRS board conduct a formal hearing on his transfer request. He alleged that other county sheriffs had been allowed a free transfer, while petitioner had not, thereby resulting in discriminatory treatment of petitioner. The board granted this request and assigned the case to the Office of Administrative Law.
After a prehearing conference before ALJ Lavery, the ALJ requested that the board clarify its decision. By letter of August 18, 1987 the board issued a "supplemental decision" explaining that (1) Forrester's February 1986 memorandum and resulting regulation should be read to provide relief to the other 20 county sheriffs who were not age-eligible for transfer during the eligibility period created by N.J.S.A. 43:16A-3.6 & -3.7; (2) only petitioner among the 21 sheriffs was age-eligible *193 at that time; (3) only petitioner had the chance to transfer; and (4) by choosing not to take advantage of that opportunity (for economic reasons), petitioner forever lost his chance.
A hearing was conducted by the ALJ on October 20, 1987, for which the parties submitted briefs and a stipulation of facts. Thomas Bryan, executive assistant to Director Forrester was the only witness. Bryan confirmed that the purpose of the 1986 memorandum and implementing regulation was to benefit those who had been denied entry because of the entry-age limit. Its aim was to remedy past age discrimination. While the new policy included county sheriffs, it was not specifically adopted with them in mind; rather, it was intended to ameliorate the unfairness to all PFRS-eligibles who had been prevented from joining PFRS by reason of the entry-age limit of 35 in N.J.S.A. 43:16A-3.
Bryan also conceded that if petitioner had been over the 37-year-old limit in 1984 and, therefore, barred by age, he would have been able to join PFRS under the 1986 change. Bryan explained that the Division had construed the new policy as barring one, such as petitioner, who had been age-eligible in 1984 but who had elected not to transfer; such persons had not been discriminated against on the basis of age.
It was stipulated that about 900 employees applied for PFRS membership based on the February 1986 memorandum and subsequent regulation. About 700 of the applications were granted and about 200 were denied. At least three county sheriffs were among the grantees.
The ALJ issued his decision on December 24, 1987. He observed that respondent's principal argument was that the intent of the February 1986 memo and resulting regulation was to deny a cost-free transfer to anyone who had chosen not to transfer despite an earlier opportunity to do so. But, ruled the ALJ, such an intention was not stated in either the 1986 memo or regulation:

*194 ... However, while there is no doubt, in view of Mr. Bryan's completely credible testimony, that those personnel exposed to "windows of opportunity" under various short-term laws (eg. L. 1987 [sic; 1983], c. 439) were meant to be excluded by the Director from the benefits of both policy and rule, neither the policy memo nor the rule articulates that intent....
In order to be recognized as controlling, ruled the ALJ, a statement of intention had to be contained in either a formally promulgated rule or in the rule's statement of purpose, as published in the New Jersey Register. (The statement of purpose is quoted at page 10, supra.) Noted the ALJ concerning this statement:
This is the Division's expression of legislative intent to the public. Conspicuous by its absence is any statement of the Director's intent that persons who were given an opportunity to transfer to PFRS under L. 1983, c. 439, or similar laws, would not be covered by the rule. There is no hint to the public that such persons (in fact, only petitioner) would be treated as a separate class, carved from all who were denied entry because of the age limit.
According to the ALJ, subsequent expressions of intention (as by Bryant before the ALJ) were entitled to no greater weight that any other expert opinion and could not be accepted to add a meaning not reasonably inferable from the language or its concurrent history.
Thus, ruled the ALJ, petitioner's claim rose or fell on whether he had been denied enrollment because of the entry-age limit of N.J.S.A. 43:16A-3, within the terms of N.J.A.C. 17:1-12.7, without regard to whether he once turned down a chance to transfer. The ALJ found that there was such a denial for reasons of age. He reasoned as follows. First, under the limited transfer right provided by N.J.S.A. 43:16A-3.7, petitioner was age-eligible only until April 9, 1984, or 90 days from the January 9, 1984 effective date of N.J.S.A. 43:16A-3.7. Second, once this transfer right expired on April 9, petitioner became subject to the same entry-age limit applicable to all prospective PFRS members, namely, the 35-year limit of N.J.S.A. 43:16A-3. Third, that limit was enforced by the Division until July 11, 1984, when the Attorney General advised that such limits were unenforceable under the ADEA. Fourth, between April 9 and July 11, 1984, petitioner was, in effect, "denied enrollment" in PFRS *195 because he was over 35. Thus, concluded the ALJ, petitioner fell squarely within the class of those intended to be benefitted by N.J.A.C. 17:1-12.7. That petitioner was eligible for a transfer during a 90-day period in early 1984 did not negate the fact that once that period expired, he was subject to the entry-age limit which N.J.A.C. 17:1-12.7 later sought to retroactively void:
The "opportunity" provided by the Act of 1983 does nothing to change the fact of petitioner's later exclusion because of an entry age requirement.... Whether or not L. 1983 c. 439 offered a temporary "window" of relief for a few months does not alter the legal reality of N.J.S.A. 17:1-12.7's plain language. Since petitioner at all times, but for those months covered by the Act, was barred from PFRS by an entry age, he too is entitled to the rule's benefits.
The PFRS board issued its final decision on March 22, 1988, in which it rejected the ALJ's recommended decision. In pertinent part the board found that (1) petitioner chose not to transfer; (2) he was not denied the right to transfer for reasons of age (or any other reason); (3) the February 1986 memorandum and implementing regulation, N.J.A.C. 17:1-12.7, allowed transfers only for those whose entry had been denied because of their age; (4) petitioner forwent his opportunity to transfer when he declined to do so in 1984; and (5) the policy of the Division and intent behind N.J.A.C. 17:1-12.7 was to deny a transfer to anyone (such as petitioner) who had the opportunity to transfer under N.J.S.A. 43:16A-3.7 but who opted not to.
Petitioner filed a timely notice of appeal.
An administrative agency's interpretation of its regulations is entitled to substantial weight. Petition of Adamar of New Jersey, 222 N.J. Super. 464, 469 (App. Div. 1988); New Jersey Builders Assoc. v. Department of Environmental Protection, 169 N.J. Super. 76, 89-90 (App. Div. 1979); In re Plainfield-Union Water Co., 57 N.J. Super. 158, 177 (App.Div. 1959). "It is the intention with which the rule or regulation was adopted that is controlling." Ibid. The board's decision denying appellant a free transfer implemented the clear intent of N.J.A.C. 17:1-12.7 to provide a remedy to victims of prior age discrimination. This intent is apparent from the 1986 policy *196 memorandum, the statement of the rule's purpose and effect, 18 N.J.R. 627, and the regulation's language which clearly stated that it was applicable to persons who were "denied enrollment ... because of the entry age limit...."
The issue before the board was whether appellant had been denied enrollment due to the age limit. The board's determination was neither arbitrary nor unreasonable and was supported by substantial credible evidence in the record. In re Suspension of Heller, 73 N.J. 292 (1977); Campbell v. Department of Civil Service, 39 N.J. 556 (1963); East Windsor Reg'l Bd. of Ed. v. State Bd. of Ed., 172 N.J. Super. 547 (App. Div. 1980).
Appellant was born on July 14, 1946. He became Camden County Sheriff in January 1980 when he was 33 years old. Appellant was age eligible for admission into PFRS at that time. However, he could not join PFRS in 1980 because that retirement system did not cover sheriffs. Consequently, appellant was not the victim of age discrimination from January 1980 to January 9, 1984. On the latter date, all sheriffs became eligible to join PFRS. Simultaneously, the statute which made appellant's position PFRS eligible rendered appellant age eligible because on January 9, 1984, appellant's age, corrected from military service, was less than 37.
Appellant's 11 years of prior PERS service prevented him from joining PFRS in 1984, not his age. Protecting his substantial PERS service, which had accrued before appellant held a PFRS-eligible position, would have cost appellant $54,313.71. Appellant made a business decision to forego PFRS membership because of the transfer cost. The transfer cost was not related, in any way, to previous age discrimination. Thus, the record supports the Board's determination that appellant was not denied enrollment because of his age, and that determination should not be disturbed.
Appellant contends that denying him a cost-free transfer made available to other sheriffs constitutes unlawful age discrimination contrary to N.J.S.A. 10:5-12 and violates his right *197 to equal protection under the United States and New Jersey Constitutions. We conclude that these contentions are without merit. The cost-free transfer is being denied because the board has determined that he was not the victim of prior age discrimination. Cf. Giammario v. Trenton Bd. of Educ., 203 N.J. Super. 356 (App. Div. 1985), certif. den. 102 N.J. 336 (1985), cert. den. 475 U.S. 1141, 106 S.Ct. 1791, 90 L.Ed.2d 337 (1986) (salary schedule negotiated between employer and union did not violate law against discrimination though it favored younger workers). Moreover, the distinction between a victim of prior age discrimination and those who were not victims does not create a suspect classification for purposes of equal protection analysis. Cf. Right to Choose v. Byrne, 91 N.J. 287, 305-306 (1982); Levine v. Institutions and Agencies Dept. of N.J., 84 N.J. 234, 257-260 (1980). Nor is the right to membership in PFRS rather than in PERS a fundamental right. Providing a remedy for victims of age discrimination is a legitimate state interest. See N.J.S.A. 10:5-1 et seq.
Affirmed.
NOTES
[1] The other two cases are Koschker v. Board of Trustees, Police and Firemen's Retirement System, 233 N.J. Super. 209 (App. Div. 1989), and Allen v. Board of Trustees, Police and Firemen's Retirement System, 233 N.J. Super. 197 (App.Div. 1989).
[2] Neither party having specified the date of petitioner's transfer application, it is impossible to determine whether he met the 90-day deadline, which required that he file by April 9, 1984. The State does not argue that he breached this condition, however, and, as indicated below, he was not rejected for that reason.