619 A.2d 660

IN THE MATTER OF NAOMA DYKAS.

Superior Court of New Jersey
Appellate Division

Argued December 1, 1992—Decided January 29, 1993.

---

628

Before Judges R.S. COHEN, MUIR, Jr. and KESTIN.

*Steven P. Weissman* argued the cause for appellant, *Naoma Dykas.*

*Joann Fitzpatrick,* Deputy Attorney General, argued the cause for respondent, Merit System Board (*Robert J. Del Tufo,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; Ms. *Fitzpatrick* on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

In October, 1989, petitioner, Naoma Dykas, was diagnosed as suffering from carpal tunnel syndrome in both wrists, more severe on the left than on the right. On November 14, 1989, she underwent surgery to correct the condition in her left wrist and received sick leave injury (SLI) benefits pursuant to *N.J.S.A.* 11A:6–8 and *N.J.A.C.* 4A:6–1.6 for her two-month recovery period. Petitioner underwent a second surgical procedure on August 31, 1990 to correct the condition in her right wrist. The recovery period for this operation was 1½ months. Sick leave injury benefits for this latter period of disability were denied by her employing agency, the Division of Motor Vehicles (DMV).

Petitioner appealed and the Merit System Board (Board) upheld the denial on two grounds. One was that an "accident date" of "approx. 06–01–89" was specified in the "Employer's First Report of Accidental Injury or Occupational Disease" submitted by petitioner on October 30, 1989; and that the time period between the specified date of injury, June 1, 1989, and the date of the second surgery, August 31, 1990, exceeded a one-year limitation established in *N.J.A.C.* 4A:6–1.6(b)3, which provides:

Benefits are limited to a one year period from the initial date of the injury or illness.

The report had described the injury as "Carpol (sic) Tunnel Syndrome—Both Wrists (Surgery on left)." In a submission to the Board, the DMV asserted its wish to waive the one-year limitation, but indicated that it was uncertain whether the type of injury suffered by petitioner qualified for the benefit sought. That caveat was articulated notwithstanding the DMV's grant

of SLI benefits to the petitioner in relation to the first surgery without having raised any such question.

In its other ground for denying petitioner's application, the Board held that she had "allege[d] that her condition was caused by the repetitive sorting of cards rather than a single incident. This type of injury does not meet SLI criteria...." The Board at the time, therefore, appears to have rejected occupational diseases for SLI coverage, recognizing only traumatic injuries as being covered.\* On petitioner's request for reconsideration, the DMV once again stated its position that the application should not be denied on the basis of the one-year limitation, but that it accepted the ruling that the type of injury did not qualify for benefits. The petition for reconsideration was denied and this appeal ensued.

Petitioner argues that the one-year limitation contained in *N.J.A.C.* 4A:6–1.6(b)3 does not relate to the time within which an employee may file a claim, but rather establishes a one-year maximum for the receipt of benefits. The meaning of that provision is obscure and ambiguous. While the words admit of the interpretation advanced by the petitioner they also support the interpretation made by the Board. One way of resolving such a dilemma would be to give substantial weight to the agency's interpretation of its rules and regulations. *Simon v. Board of Trustees,* 233 *N.J.Super.* 186, 195, 558 *A.*2d 490 (App.Div.1989). Yet, a rule which does not contain a clear or objectively ascertainable standard may not be upheld. *New Jersey Ass'n of Health Care Facilities v. Finley,* 83 *N.J.* 67, 82, 415 *A.*2d 1147 (1980). In this instance, however,

---

\* The Board's denial was based upon *N.J.A.C.* 4A:6–1.6(c)1:

Injuries or illnesses which would not have occurred but for a specific work-related accident or condition of employment are compensable.

In 1992, *N.J.A.C.* 4A:6–1.6(c)4 was added to the rules governing this area: Progressive, degenerative or repetitive motion disorders, such as asbestosis or carpal tunnel syndrome, are compensable only when the claim is supported by medical documentation clearly establishing that the disorder would not have occurred but for the performance of specific work duties.

we have determined that even under the Board's interpretation of the rule, the petitioner must prevail on the timing question. This conclusion is based upon our understanding of the purpose served by the SLI benefit. The Legislature's design in creating a sick leave injury benefit is best fostered by interpreting *N.J.A.C.* 4A:6–1.6(b)3 in the manner advanced by petitioner.

In order to determine when a time period expires, one must first know when it began. The premise of the Board's denial of benefits is that petitioner's eligibility period commenced on June 1, 1989, the date which she indicated on her report form as marking the onset of her carpal tunnel syndrome. Yet, as of June 1, 1989, petitioner had not become disabled. The purpose of the SLI benefit seems clear. It is to provide a continuation of salary to any covered State employee "who is disabled due to a work-related injury or illness [by granting] a leave of absence with pay." *N.J.A.C.* 4A:6–1.6(b). It is clear that SLI benefits are designed only for the purpose of providing income stabilization and continuation for a designated period of time to employees with work-related injuries or illnesses; the benefits are not intended to compensate employees for their injuries or illnesses. Payments are to be reduced not only by any other temporary disability benefits received, *N.J.A.C.* 4A:6–1.6(b)2, but also by any compensation earned on a part-time return to work pending full recovery, *N.J.A.C.* 4A:6–1.6(b)1. When viewed in this light it is evident that "the initial date of the injury or illness", *N.J.A.C.* 4A:6–1.6(b)3, must refer to the date the disability began, not to some prior date when an injury or illness was suffered or became manifest, but which did not disable the employee initially even though it did so ultimately.

With this understanding, if *N.J.A.C.* 4A:6–1.6(b)3 is seen as a one-year time limitation provision related to notice, it is clear that the petitioner provided timely notice in her October 30, 1989 report. In filing that report, petitioner stated that she suffered carpal tunnel syndrome in both wrists as a result of

her work, and was about to become disabled by reason of the surgery needed to address the condition.

If, on the other hand, *N.J.A.C.* 4A:6–1.6(b)3 is to be taken as imposing a one-year time limitation from the "initial date of the injury or illness", the initial disabling event was the date of petitioner's first surgery November 14, 1989. Petitioner's second sick leave was occasioned by the surgery of August 31, 1990, well within the one-year limitation.

The basis of the Board's decision accords undue emphasis to petitioner's statement in her October 30, 1989 report that the accident date was June 1, 1989. There was no "accident" here. *N.J.A.C.* 4A:6–1.6(c)1 does not require an accident if the injury or illness was caused by a specific condition of employment. Petitioner's statement can be seen simply as an honest effort to comply with parameters established by her employer, guided by the language of the form provided by the employer. The statement should not be held against her to the extent of denying benefits for an occupational disease which, by its nature, except for the symptoms experienced, cannot be assigned a definite date of onset.

■ Sick leave injury benefits, just like any other remedial legislative program, may be attended by reasonable limitations. *See Hutton Park Gardens v. West Orange,* 68 *N.J.* 543, 564–65, 350 *A.*2d 1 (1975). The Legislature, in *N.J.S.A.* 11A:6–8, has seen fit to delegate to the Board the responsibility of establishing the criteria and procedures governing the program. It may be that this delegation of legislative power lacks adequate standards to guide the agency, *Ward v. Scott,* 11 *N.J.* 117, 122–28, 93 *A.*2d 385 (1952), but that issue has not been raised by either party. Narrower grounds of decision are available, which have been addressed by the parties and go to the merits of this case.

■ Neither a one-year limitation on benefits nor a one-year notice requirement is facially unreasonable. No valid public purpose is served, however, by denying benefits, other-

wise available, to an employee whose employment-related condition is painful but not disabling and requires more than one stage of disabling treatment. Certainly, an employee who is conscientious enough to return to work between treatment stages, as this petitioner did, should not be penalized for her fidelity. If the Board chooses to establish a one-year maximum for the receipt of benefits, an employee whose injury or illness is reported in a timely fashion should not suffer a loss of benefits because there is a medical or practical necessity for a sufficiently long hiatus between stages of treatment so as to extend its entire course beyond one year; as long as the total of benefits received does not exceed a year's worth of salary continuation.

In reaching this conclusion, we have not taken into account the fact that the Board, from time to time, has waived the one-year limitation on a case by case basis. We are unable, on the record before us, to evaluate petitioner's contention that the refusal to extend the limitation in this case is arbitrary when compared to the Board's action in other cases. While uniformity for its own sake cannot properly be expected in matters such as this, *see generally Barone v. Dep't. of Human Services,* 107 *N.J.* 355, 526 *A.*2d 1055 (1987), the Board is clearly required to make its decisions on a rational, qualitative, and non-arbitrary basis. *See Campbell v. Dept. of Civil Service,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963).

As regards the alternate ground for the Board's decision, the only medical evidence before the Board were several reports of petitioner's treating physician, Dr. Moskowitz. The Board reached its conclusion to deny benefits on the ground that SLI criteria had not been met, despite repeated statements of opinion in these reports that petitioner's conditions were caused by her work duties, which were described with specificity sufficient to satisfy the requirement of *N.J.A.C.* 4A:6–1.6(c)1. Although a finder of fact may disbelieve uncontroverted evidence, *Amaru v. Stratton,* 209 *N.J.Super.* 1, 20, 506 *A.*2d 1225

(App.Div.1985), where uncontroverted expert evidence is rejected in an administrative proceeding, reasons must be given. *Katz v. Township of Howell*, 67 *N.J.* 51, 62–63, 335 *A.2d* 14 (1975). *Cf. In re Plainfield–Union Water Co.*, 11 *N.J.* 382, 395, 94 *A.2d* 673 (1953). Although no "specific work-related accident" was proven here, petitioner's proofs manifestly established that her carpal tunnel syndrome was caused by a "specific ... condition of employment," *i.e.*, her work duties as described. Thus, petitioner met the eligibility requirement of *N.J.A.C.* 4A:6–1.6(c)1. Without any evidence to countervail the clearly expressed opinions of Dr. Moskowitz, the Board's finding that petitioner did not come within established criteria was without adequate basis.

Reversed and remanded for a calculation and award of sick leave injury benefits to the petitioner.