670 A.2d 11

IN THE MATTER OF IRENE MUSICK, DEPARTMENT
OF CORRECTIONS.

Argued October 11, 1995—Decided February 1, 1996.

*Lewis A. Scheindlin,* Deputy Attorney General, argued the cause for appellant, Merit System Board (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Mr. Scheindlin* and *Joann Fitzpatrick,* Deputy Attorney General, on the briefs).

*Steven P. Weissman* argued the cause for respondent, Irene Musick (*Weissman & Mintz*, attorneys; *Mr. Weissman* and *James M. Cooney*, on the briefs).

The opinion of the Court was delivered by

O'HERN, J.

This appeal concerns sick-leave injury (SLI) benefits for State employees who suffer work-related injuries. These benefits are supplementary to otherwise collectible workers' compensation benefits. The issue in this case is the validity of an agency interpretation of a regulation that would limit SLI benefits to a one-year period following the first date of disability from work. We find that to place such a cap on benefits is within the statutory authority of the State's personnel agency and that the agency's interpretation of the governing regulation was reasonable.

I

The case arises from Irene Musick's contraction of carpal tunnel syndrome in connection with her work as a clerk-bookkeeper in the New Jersey Department of Corrections (DOC). Carpal tunnel syndrome (CTS) is a disease of the musculoskeletal system most frequently associated with the stress arising from the repetitive movement of the hands as in the case of a computer keyboard operator. The symptoms of the disease are pain, numbness in the hands, and sometimes radiating pain to the back. The pain is similar to that experienced with epicondylitis, the repetitive stress injury (RSI) suffered by carpenters or even weekend athletes in the form of tennis elbow. The effects of such an injury are painful and disabling.

For purposes of this appeal, we generally accept the version of the case set forth in Musick's brief. Irene Musick first experienced her injury on August 14, 1989, when she complained of numbness in the fingers of her left hand and pain in her left arm and shoulder. Because the injury was work-related, her employer referred her to a DOC physician. She was examined by the DOC

physician who in turn referred her to the West New Jersey Occupational Health Services (WJO). Physicians at WJO diagnosed CTS and told her to remain off duty. The DOC personnel office, however, ordered her to return to work on August 28, 1989 in disregard of the doctor's orders. After she returned to work, she remained in intense pain. She could not work. Her physician referred her to an orthopedic surgeon, who operated on her left hand on September 21, 1989, and cleared her to return to work on November 27, 1989.

Her employer denied her claim for SLI benefits for the period between August 14 and November 27, 1989, on the basis that she had failed to establish that her condition was work-related. Musick appealed the denial of her 1989 benefits to the Merit System Board (the Board). That Board is the body within the State Department of Personnel that administers the SLI program. She relied on the opinion of her orthopedic doctor that "based upon her work as a bookkeeper and based upon [her] history, physical examination and findings at operation, it is clear that her carpal tunnel was work related." At first the Board denied Musick any SLI benefits for the CTS in her left hand. Musick's initial appeal to the Appellate Division resulted in a remand to await the outcome of other matters pending in the Appellate Division.

Shortly after the remand, Musick began to experience pain in her right hand. Her physicians agreed that these symptoms were a manifestation of "work-related disorder." She underwent surgery on September 3, 1991. On September 16, 1991, she was diagnosed with CTS on her left hand and she had a second operation on that hand on October 15, 1991.

On January 6, 1992, the Board issued a final decision with respect to Musick's CTS-related SLI claims. The Board found that she was disabled from work from August 14, 1989, until November 27, 1989, due to left carpal tunnel syndrome and was disabled from August 6, 1991, until October 9, 1991, as a result of right carpal tunnel syndrome. The Board further found that Musick was disabled from October 9 to December 2, 1991, as a

result of recurrence of CTS in her left hand. The Board granted Musick SLI benefits for the period of August 14 through November 27, 1989, for left-hand CTS and from August 6 through October 9, 1991, for right-hand CTS. However, the Board denied SLI benefits for left CTS from October 9, 1991, through December 2, 1991. According to the Board, "[Musick's] disability due to left carpal tunnel syndrome in 1991 was a continuation of her disability dating from her 1989 claim. SLI benefits are limited and are not compensable for disabilities which continue for more than a one-year period." The Board relied on the regulation that then defined the scope of SLI: "Benefits are limited to a period beginning on the initial date of the injury or illness and ending one year from that date." *See N.J.A.C.* 4A:6–1.6(b)3.

In its unpublished opinion, the Appellate Division reversed and remanded the case for an award of SLI benefits on account of the 1991 recurrent CTS disability in Musick's left hand. The Appellate Division found that "[t]here is no dispute but that the condition of carpal tunnel syndrome in [Musick's] left wrist, which caused the later periods of disability, is related to the performance of her specific duties and satisfies the criteria of *N.J.A.C.* 4A:6–1.6." Because there was a return to work between the two periods of left-hand CTS disability, 1989 and 1991, the court found "no reasonable basis to penalize [Musick] for the hiatus . . . as the benefits to which she [was] entitled [did] not exceed one year of salary continuation." In its view, there was "nothing in the [enabling statute,] *N.J.S.A.* 11A:6–8[,] to indicate that the Legislature had any contrary intent." It therefore invalidated *N.J.A.C.* 4A:6–1.6(b)3 to the extent that it would cap the benefits at one year from the date of injury. We granted the Board's petition for certification. 140 *N.J.* 276, 658 A.2d 299 (1995).

## II

*N.J.S.A.* 11A:6–8 authorizes the Department of Personnel (DOP) to promulgate rules governing leaves of absence for career senior executive and unclassified employees in the state service

due to "injury or illness directly caused by and arising from State employment." *Ibid.* Plaintiff urges us to understand the historical context in which the dispute arises. She claims that the Board and its predecessor, the Civil Service Commission, ignored the statutory directive and refused to provide paid leave to employees suffering from progressive and degenerative occupational injuries arising from employment.

We need not dispute or debate Musick's version of the history. Suffice it to observe that the State's experience with CTS has been similar to that of the private sector. *See generally,* Jay M. Zitter, Annotation, *Workers' Compensation: Recovery For Carpal Tunnel Syndrome,* 14 *A.L.R.*5th 1, 12 (1993) (observing that carpal tunnel syndrome "cannot easily be classified within the broad parameters of the various [state] workers' compensation schemes" and noting that most state courts at first failed to recognize CTS as a compensable injury).

The Musick case bridges a five-year span beginning in 1989, during which the Board revised its SLI policy concerning progressive and degenerative occupational injuries. In that period of time, the Appellate Division rendered two decisions relevant to such cases and the SLI regulations were twice amended.

### Stage I—A Period of Doubt About CTS Claims

Petitioner claims that prior to 1991, the Board "routinely denied" SLI claims for CTS. The issues were recurring.

> In today's modern workplace, computer monitors and keyboards are as common as the copy or fax machine. It is therefore not surprising to learn that the fastest growing category of workplace personal injury claims is coming from an epidemic of repetitive stress injuries ("RSIs"). Repeated, long-term trauma to the hands and wrists through the use of a computer keyboard, for example, allegedly cause RSI. Office workers and journalists who seek to tie the frequent and regular use of their computer keyboards to a variety of debilitating hand and wrist disorders, such as tendinitis and carpal tunnel syndrome, are the primary plaintiffs bringing such claims.
>
> [Craig T. Liljestrand, *Repetitive Stress Injuries And The Computer Keyboard: If There Still Is No Causal Relationship Between Use And Injury, Is It Wise To Warn?,* 13 *J. Marshall J. of Computer and Info. L.* 391, 391 (Spring 1995) (footnotes omitted).]

Even in the more employee-oriented context of workers' compensation benefits, jurisdictions at first resisted compensation for repetitive injuries like CTS. *See Village v. General Motors,* 15 *Ohio St.*3d 129, 15 OBR 279, 472 *N.E.*2d 1079, 1081 (1984) (finding that prior decisions denying compensability for disabilities developing over period of time because they lacked suddenness, unexpectedness and unforeseeability, frustrated clear purpose of workers' compensation law to compensate workers injured as result of employment). By October 1991, the Board, prompted by unreported decisions of the Appellate Division and its own investigation of CTS claims among State employees, recognized that it needed to adjust its policy regarding the distribution of SLI benefits to include injuries like CTS. Accordingly, the Board began to award SLI benefits for CTS claims.

In considering its rules on SLI, the Board declared that the then "current rules [1] on SLI benefits d[id] not adequately address claims arising from disorders such as carpal tunnel syndrome." 24 *N.J.R.* 2108 (June 15, 1992). The Board considered two options. Option 1 would have rejected injuries such as CTS unless certain standards of proof were met; Option 2 stated that SLI benefits would be available for "repetitive motion disorders" such as CTS "when the claim is supported by medical documentation clearly establishing that the disorder would not have occurred but for the performance of specific work duties." *Id.* at 2109.

### Stage II—Clear Recognition of SLI Benefits to Employees Who Suffer CTS

In October 1992, after reviewing public comments regarding the two options, the Board rejected Option 1 on the grounds that "restricting SLI to injuries caused by a specific event, as set forth in Option 1, would unfairly deny benefits to employees who suffer disabling injuries due to work activities occurring over a period of

---

[1] At that time *N.J.A.C.* 4A:6–1.6(c) limited SLI benefits to "[i]njuries or illnesses which would not have occurred but for a specific work-related accident or condition of employment." 24 *N.J.R.* 2108, 2109 (June 15, 1992).

time," while Option 2 would permit such claims, subject to medical documentation. 24 *N.J.R.* 3721 (October 19, 1992). The effect of adopting Option 2 was to eliminate clearly the necessity of establishing a one-time occurring accident or traumatic event as the cause of an injury or illness for which SLI benefits are available.

### Stage III—Disputes About Length of Coverage

In January 1993, the Appellate Division dealt with the application of the one-year limitation on benefits. *In re Naoma Dykas,* 261 *N.J.Super.* 626, 619 *A.*2d 660 (App.Div.1993). At that time, *N.J.A.C.* 4A:6–1.6(b)(3) stated, "Benefits are limited to a one year period from the initial date of the injury or illness."

In *Dykas,* the worker suffered from CTS in both wrists. She first reported the affliction to her employer on approximately June 1, 1989. *Dykas, supra,* 261 *N.J.Super.* at 629, 619 *A.*2d 660. The first surgery took place November 14, 1989, and the second on August 31, 1990. The worker received SLI benefits only for the recovery period following the first surgery. The Board upheld the denial of benefits on the grounds that the "date of the second surgery, August 31, 1990, exceeded [the] one-year limitation established in *N.J.A.C.* 4A:6–1.6(b)3." *Ibid.* The issue was whether "the initial date of the injury or illness" was the first date her discomfort was brought to the employer's attention (notice), or the date when she was actually out of work due to the illness (disability). The Board applied the "notice" theory and limited SLI benefits to one year from June 1, 1989.

The Appellate Division reversed and remanded the case, holding that the "date the disability began," not the date when the "injury or illness was suffered or became manifest," is "the initial date" from which the one-year period begins to accrue. *Id.* at 631, 619 *A.*2d 660. As applied to the *Dykas* case, the one-year period began on November 14, 1989, which was the date of the disabling surgery. The second sick leave, resulting from the surgery on August 31, 1990, occurred within the one-year time limit and, therefore, qualified for SLI benefits.

The *Dykas* court discussed the effect a hiatus in treatment should have on the one-year time limitation. The court found:

> If the Board chooses to establish a one-year maximum for the receipt of benefits, an employee whose injury or illness is reported in a timely fashion should not suffer a loss of benefits because there is a medical or practical necessity for a sufficiently long hiatus between stages of treatment so as to extend its entire course beyond one year; as long as the total of benefits received does not exceed a year's worth of salary continuation.

[*Id.* at 633, 619 *A.*2d 660.]

## Stage IV—Clarification of Remaining Issues

In response to the January 1993 *Dykas* decision the Board changed the language of *N.J.A.C.* 4A:6–1.6(b)3 and adopted sections (b)3(i) and (ii). The Board noted:

> Recent appeals concerning Sick Leave Injury (SLI) benefits have raised questions on the application of the one-year limit on benefits, particularly with regard to claims arising from carpal tunnel syndrome and similar disorders. N.J.A.C. 4A:6–1.6(b)3 currently provides that SLI benefits are limited to a one year period from the initial date of the injury or illness. The longstanding interpretation of this rule, as expressed in decisions by the Merit System Board, has been that the one year period is continuous, and does not consist of aggregate periods of disability which total one year. To clarify the rule in conformance with this interpretation, N.J.A.C. 4A:6–1.6(b)3 would be amended to provide that SLI benefits are limited to a period beginning on the initial date of the injury or illness and ending one year from that date. Further, a provision would be added that SLI benefits shall not be paid for any absence occurring more than one year from the initial date of the injury or illness, even if the aggregate period of disability does not exceed one year. With regard to progressive, degenerative or repetitive motion disorders, such as asbestosis or carpal tunnel syndrome, it is nearly impossible to specify "the initial date of the injury or illness" because of the nature of those disorders. Therefore, the Board proposes to add a new N.J.A.C. 4A:6–1.6(b)3ii providing that the one year period begins with the first date of disability from work.

[25 *N.J.R.* 4824 (November 1, 1993).]

In other words, the Board agreed with the *Dykas* court that CTS injuries begin on the "first date of disability from work" but rejected the *Dykas* "hiatus" exception. The new regulation, effective February 7, 1994, provides:

Sick Leave Injury (SLI) requirements: State service

. . . .

(b) An employee who is disabled due to a work-related injury or illness shall be granted a leave of absence with pay.

. . . .

3. Benefits are limited to a period beginning on the initial date of the injury or illness and ending one year from that date.

i. Benefits shall not be paid for any absence from work occurring more than one year from the initial date of the injury or illness, even if the aggregate period of disability does not exceed one year.

ii. In cases of disorders as set forth in (c)4 below [including the CTS type injuries], the one year period shall begin with the first date of disability from work.

[*N.J.A.C.* 4A:6–1.6(b)3.]

In sum, the Board policy is now clear that provable claims of CTS will be recognized but SLI benefits will be limited to one year from the first date of disability from work.[2]

### III

It is against this background that we must decide Irene Musick's claim for SLI benefits. Musick's injuries arose during Stage I, when the Board was questioning CTS claims. The Board made its January 1992 decision to grant partial CTS benefits after it had begun its process of review of its regulations but prior to the *Dykas* decision. Subsequent to *Dykas,* Musick petitioned the Board to reconsider its partial denial of SLI benefits to Musick. The Board denied Musick's request on May 18, 1993.

Musick appealed the Board's denial, and the Appellate Division issued its decision on November 3, 1994, nine months after the Board had amended *N.J.A.C.* 4A:6–1.6(b)3 (Stage IV).

---

[2] We do not address the question of whether the 1994 clarification of this regulation constitutes a unilateral alteration in the terms and conditions of employment under the Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1 to – 21, or the question of whether negotiations over the issue are preempted, because we rely upon the Board's administrative interpretation of its pre-existing regulation.

In her appeal to the Appellate Division, Musick argued that the Appellate Division decision in *Dykas* was controlling and that the Board had chosen to ignore the decision in that case. According to the Board, however, "[A]ny language in ... *Dykas* which may have dealt with an aggregate one-year maximum for the receipt of benefits was clearly dicta[,] since that was not the issue before the court." The Board said that *Dykas* dealt only with the question of causation. Actually, *Dykas* dealt with both causation and the date when the one-year period of SLI benefits began. But because *Dykas* held, in the alternative, that it is the onset of disability, not notice of injury, that begins the one-year period, there was technically no need to decide the "hiatus" issue. Whether we view the *Dykas* language as *dictum* or holding, still we must decide if the Board's interpretation is legally correct, giving due consideration to the *Dykas* court's interpretation of the rule.

The standards for judicial review are familiar. Courts have only a limited role to play in reviewing the actions of other branches of government. In light of the executive function of administrative agencies, judicial capacity to review administrative actions is severely limited. *Gloucester County Welfare Bd. v. New Jersey Civil Serv. Comm'n*, 93 *N.J.* 384, 390, 461 *A.*2d 575 (1983). Courts can intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or other state policy. Although sometimes phrased in terms of a search for arbitrary or unreasonable action, the judicial role is generally restricted to three inquiries: (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency bases its action; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors. *Campbell v. Department of Civil Serv.*, 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963).

In this case, we deal essentially with the first and third prongs of the measure, namely, whether the agency followed the law, and whether, in applying the law to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made. The prongs are somewhat intertwined, the legal question being whether the Legislature would intend that its SLI benefits be capped at a period of one year from the onset of the disease, especially in the case of degenerative and progressive occupational diseases. On the question of interpretation, courts normally defer to agency determinations and their enabling act so long as the interpretation is reasonably debatable. *Richard's Auto City v. Director, Div. of Taxation,* 140 *N.J.* 523, 530, 659 *A.*2d 1360 (1995); *G.E. Solid State v. Director, Div. of Taxation,* 132 *N.J.* 298, 306, 625 *A.*2d 468 (1993).

The worker argues that the Board's policy is counter-productive in that it encourages state employees to remain out of work rather than to attempt to return to work and work through the pain as long as possible. We agree that policy choices can be made on both sides of the argument. We believe, however, that the Legislature has not clearly limited the agency's choice of policy. It has given a very broad mandate to the agency to adopt the necessary rules and regulations to implement an SLI benefits program. In its administration of the SLI program, the Board has determined that the most feasible way to administer the program is to cap the benefits at one year from the onset of the disability.

The worker counters that the proffered reasons of the Board, that it enables departments to formulate budgetary and staffing plans, to determine with certainty whether an injury is compensable, and to conserve the State's limited fiscal resources, are not achieved by the regulation. She argues that the arbitrary cutoff of benefits after one year from the initial date of absence does not assist in managing and determining staffing needs, nor is there a significant impediment to the ability to develop budgets. Moreover, time frames are always difficult to predict because of the

progressive onset of the disease. Finally, she urges that the State's resources will not only not be conserved, but rather will be depleted because employees who might be inclined to pursue a conservative regime of medical treatment may be induced to submit to more invasive procedures requiring their absence of work and thus necessitating the payment of extra benefits. Common sense, the worker urges, suggests that the one-year cap will increase, not decrease, expenditure of the State's limited fiscal resources.

The agency counters that its restricted approach to SLI benefits is more consistent with legislative policy. The Legislature, it argues, reasonably concluded that the Executive Branch, "which must deal on a day to day basis with the demands on the public fisc," was in the best position to determine the restrictions on SLI benefits. The Board emphasizes that SLI benefits do not come from the same mold of remedial social legislation as do Workers' Compensation benefits. In *Morreale v. New Jersey Civil Serv. Comm'n*, 166 *N.J.Super.* 536, 400 *A.*2d 126 (App.Div.), *certif. denied*, 81 *N.J.* 275, 405 *A.*2d 819 (1979), the court explained:

> In particular reference to the cost of disability sick-leave benefits of public employees, we must consider that the burden falls on the State Government, to be defrayed by the taxpayers, and that in that area the imposition of costs and expenses upon the public should not be inferred from a statute not expressly or by fair implication mandating the asserted charge against the State.
>
> [*Morreale, supra,* 166 *N.J.Super.* at 540, 400 *A.*2d 126.]

This is not a case in which an agency is cutting off a social "safety net" that the Legislature has mandated. *See Franklin v. New Jersey Dep't of Human Services*, 111 *N.J.* 1, 20, 543 *A.*2d 1 (1988) (upholding agency regulation that would cap emergency assistance benefits at five months so long as "other programs ... are in place to make reasonably certain that ... families ... will find ... housing elsewhere"). Workers whose leaves occur more than one year after the disability arises do have recourse to any accumulated sick leave (15 days per year with no limit on accumulation) or to regular workers' compensation benefits. And finally, CTS injuries would be treated no differently than other injuries.

We thus do not consider it to be an irrational choice of policies to establish a fringe benefit for State employees that differentiates between an employee whose injury and treatment necessitate an immediate and protracted absence from work, and an employee whose treatment and absences from work may fall beyond one year from the date of the initial injury. Such a classification is not suspect. *See Texter v. Department of Human Services*, 88 *N.J.* 376, 383–84, 443 *A.*2d 178 (1982) (recognizing validity of agency discretion in choosing medical eligibility standards but remanding for agency review of its regulation). The Board retains the necessary flexibility to extend SLI benefits beyond the one-year period and acknowledges that it has done so on prior occasions. It contends, however, that waiver should occur only in rare instances and the record does not suggest that the Board abused its discretion in Irene Musick's case. In the one waiver case involving CTS the worker had taken three non-consecutive days off for CTS approximately two years prior to her surgery. In Musick's case, the SLI benefits followed her first surgery and the attendant disability.

The issues are debatable, but the debate regarding the choice of competing policies should be reserved for the agency itself unless the Legislature's intent is evident. Given the Board's balanced approach to recognition of RSI injuries and its overall need to allocate available resources among all State employees, the Board's policy determination to limit SLI benefits to one year from the date of disability is within the agency's statutory mandate and application of the policy to the employee does not constitute such a clear abuse of discretion as to warrant judicial intervention.

The judgment of the Appellate Division is reversed and the decision of the Board is reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.