**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3263-15T4

IRMA PINTO,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Argued June 6, 2017 — Decided August 3, 2017

Before Judges Suter and Grall.

On appeal from the Board of Trustees, Public
Employees' Retirement System, PERS No.
1220708.

Richard A. Friedman argued the case for
appellant (Zazzali, Fagella, Nowak,
Kleinbaum & Friedman, attorneys; Mr.
Friedman, of counsel and on the brief;
Marissa A. McAleer and Kaitlyn E. Dunphy, on
the briefs).

Jeff S. Ignatowitz, Deputy Attorney General,
argued the cause for respondent (Christopher
S. Porrino, Attorney General, attorney;
Melissa H. Raksa, Assistant Attorney
General, of counsel; Mr. Ignatowitz, on the
brief).

PER CURIAM

Petitioner Irma Pinto appeals from a final agency decision of the Board of Trustees of the Public Employees' Retirement System (Board). Affirming and adopting the findings and recommendations of the Administrative Law Judge (ALJ), the Board denied Pinto's application for accidental disability and granted Pinto ordinary disability retirement. We affirm.

Our role in reviewing a decision of an administrative agency is limited. In re Carter, 191 N.J. 474, 482 (2007). We accord a strong presumption of reasonableness to an agency's exercise of its statutorily delegated responsibility, City of Newark v. Nat. Res. Council, Dep't of Envtl. Prot., 82 N.J. 530, 539, cert. denied, 449 U.S. 983, 101 S. Ct. 400, 66 L. Ed. 2d 245 (1980), give great deference to the agency's interpretation of its regulations, U.S. Bank, N.A. v. Hough, 210 N.J. 187, 191 (2012), and defer to the agency's findings of fact, Lavezzi v. State, 219 N.J. 163, 172 (2014). An agency's determination is disturbed only if it is arbitrary, capricious, or unreasonable, lacked fair support in the evidence or violated legislative policies. In re Musick, 143 N.J. 206, 216 (1996).

The Stratford Board of Education hired Pinto to do custodial work in 2004, and she sustained her disabling injury at work on April 26, 2011. The students were on spring break

that day and, for that reason, the custodians worked the day shift (7:00 a.m. to 3:30 p.m.) to do deep-cleaning, which included scrubbing and waxing the hallway and elevator floors. That project involved multiple applications of wax separated by thirty minutes to allow the previous layer to dry; after wax is applied, the floor cannot be walked on until dry.

Kenneth Pressley, the district's assistant supervisor of operations and overseer of day and night shift custodians, was working in the same school as Pinto the day she fell. Pressley assigned the tasks at the beginning of the shift. Pinto would do housekeeping work in the classrooms on the second floor.[1] Pressley and the only other custodian present, Carl DiOrio, would scrub and wax the main floor. Pressley told Pinto to use the stairway in the back of the building if she had to come down, which would allow her to leave the building without passing through the hallway being waxed.

According to Pressley's testimony, he directed Pinto not to use the elevator twice more, at least. While he was scrubbing and waxing with DiOrio, Pinto "kept coming down . . . . she kept coming down and then we — me and Mr. DiOrio both were letting

_____

[1] Apparent discrepancy in testimony identifying specific floors of the building is eliminated by DiOrio's testimony, which makes it clear that he and Pressley were counting the floors differently when they used the terms first and second floor.

A-3263-15T4

her know that she [couldn't] come this way because we was [sic] waxing, and then she was saying, 'well, I know, I be [sic] careful,' this and this, you know, it was like — it was like that, yeah."

Pressley spoke to Pinto again as she was getting off the elevator. He explained, "'Hey, Irma, you know, we're waxing these floors, you can't come this way.' And she said, 'Oh, no problem.'" He did not recall whether he put signs out, but he knew everyone in the school that day knew what was going on, and he noted the buckets have "'caution wet floor' [labels] on them."

DiOrio spoke to Pinto three or four times that day. As the lunch break was ending and Pinto was going back upstairs, he told her they were going to start the waxing. As far as DiOrio knew, Pinto used the elevator when she went up in the morning and once more, at the end of the day. At about 3:15 p.m., when DiOrio was applying the last coat of wax, he heard the elevator ding. When the doors opened, Pinto was "laying on the floor" of the elevator. Because the hallway floor was just waxed, he did not cross it because he would have fallen. He told Pinto to take the elevator up so he could meet her there and help. DiOrio had waxed the elevator five to ten minutes earlier.

During her testimony, Pinto denied being told not to take the elevator or that it was being waxed. She acknowledged using the elevator at least three times that day and knowing that in the past sometimes when the floors were waxed, everything was waxed. She had not noticed any sign of cleaning in the elevator until she was lying in the wet wax.

The ALJ found Pinto "was warned repeatedly on April 26, 2011, to avoid using the elevator." The ALJ gave "greater weight to the testimony of Pressley and DiOrio," because they had no interest in the outcome and Pinto's interest in the outcome was "very real." The ALJ concluded the fall that left Pinto disabled "was caused by her willful negligence," which was established by Pinto's "affirmative decision to use the elevator," despite the warnings of her co-workers and the available safe route, amounted to conduct evidencing "'reckless indifference to safety' within the contemplation of N.J.A.C. 17:2-6.5(a)2." N.J.A.C. 17:2-6.5(a) defines the term "willful negligence," and reckless indifference to safety is one of the meanings assigned. "[W]illful negligence" is a statutory bar to award of an accidental disability pension. N.J.S.A. 43:16A-7.

Pinto contends the Board erred in accepting the ALJ's findings of fact because they lack evidential support. Given the deference this court owes to the Board's factual

determinations and application of its regulation, we disagree. The ALJ's use of the word "repeatedly" has adequate support. Moreover, while not wholly consistent, the testimony given by Pressley and DiOrio established Pinto was told not to take the elevator and to avoid walking on the floors being waxed, which include the floor at the elevator entrance. Moreover, the inference that Pinto was aware of the safety risk involved was amply supported by the record. Pinto had been on the job for several years, had been there when waxing was done, and was aware the elevator's floor likely would be waxed with the floor leading to it.

In arguing the risk of fall was insufficiently high and the danger posed insufficiently serious to establish reckless indifference to safety, Pinto relies on Schick v. Ferolito, 167 N.J. 7 (2001). That case involves risk to other players on a golf course. Here, the question is whether a public employee engaged in conduct in a manner demonstrating "reckless indifference to [his or her] safety."

In considering whether a disregard of risk brings ordinary negligence to the level of "reckless indifference," courts assess the question in light the situation. In G.S. v. Department of Human Services, 157 N.J. 161, 179 (1999), the Court equated "the concept of willful and wanton misconduct"

with action taken by a person "with reckless disregard for the safety of others." (Citations omitted). "The term is not immutably defined but takes its meaning from the context and purpose of its use." Fielder v. Stonack, 141 N.J. 101, 124 (1995). The analysis "turns on an evaluation of the seriousness of the actor's misconduct." G.S., supra, 157 N.J. at 178 (citing Fielder, supra, 141 N.J. at 124).

In this accidental disability retirement case, the risk of danger to safety was Pinto's falling in the elevator or on the floor below, where DiOrio was waxing outside the elevator. The school's floors were being waxed on the day Pinto fell because no one was using the school. The school's practice suggests the employer's interest in limiting the risk of falls as well as its interest in avoiding disruption of the waxing or educational endeavors. Moreover, the likelihood of falls inherent in wet floors, even floors not wet with wax, is commonly understood as significant and consequential. That common understanding is evidenced by the routine and customary use of "caution wet floor" with an image depicting a slip and fall in progress in public places. Finally, Pinto disregarded the risk despite having the option to avoid the freshly waxed floors by taking the stairwell she was directed to use.

Having considered the evidence in light of our deferential standards of review, we affirm. The agency's denial of an accidental disability retirement is not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3263-15T4