**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5280-17T1

ELSIE MENDOZA-CARO,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued October 29, 2019 – Decided  January 27, 2020

Before Judges Messano and Susswein.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of Treasury, PFRS No. 3-10-48900.

George T. Daggett argued the cause for appellant.

Porter Ross Strickler, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Donna Sue Arons, Assistant Attorney General, of counsel; Porter Ross Strickler, on the brief).

PER CURIAM

Plaintiff, Elsie Mendoza-Caro, is a former Jersey City police officer who appeals from a final agency decision of the Board of Trustees of the Police and Fireman's Retirement System (Board) denying her application for an accidental disability pension. The Board's decision is based upon the findings by an Administrative Law Judge (ALJ) that the migraine headaches plaintiff suffers are not the result of injuries she sustained as a police officer but rather are a preexisting condition. In view of the deferential standard of review that applies, we decline to substitute our own judgment for the judgment of the ALJ and the Board and affirm the denial of accidental disability pension benefits.

I.

This case has a long and tortuous history. Plaintiff claims that two injuries she suffered in the line of duty disabled her, rendering her unable to perform the duties of a police officer. In 2004, a drug dealer attacked her. He slammed her headfirst into pavement, causing unconsciousness, a concussion, and a head laceration that required five staples. In 2007, she was sitting in the backseat of an unmarked police car when it was struck broadside, causing her head to hit the window and door of the car, resulting in another concussion. Petitioner contends that these work-related injuries caused her to suffer migraine headaches,

requiring her to take medications that cause drowsiness, and thus she cannot take them while she is performing the duties of an armed police officer.

Petitioner applied for an accidental disability pension on April 28, 2011. The Board at first denied her application on March 13, 2012, and plaintiff filed a timely appeal of that decision. On July 15, 2014, the Board reversed its 2012 decision, finding Petitioner totally and permanently disabled as a result of a pre-existing condition and awarding her an ordinary disability pension. (Pa52–Pa54).

A year later, on September 23, 2015, the Board determined that petitioner was no longer permanently and totally disabled. Consequently, the Board ordered that she return for duty to her former position with the Jersey City Police Department.[1] This all occurred while appellant's initial administrative appeal was pending at the Office of Administrative Law (OAL). The Board transmitted the 2015 determination to the OAL "to proceed with a hearing based upon the Board's latest action," referring presumably to the 2015 determination that plaintiff was no longer permanently disabled. From the record, it appears the

_____

[1] We were advised at oral argument that plaintiff continues to receive ordinary disability pension benefits. The Board asks us to remand this case for the ALJ to address whether plaintiff is permanently disabled and entitled to an ordinary disability pension. For reasons explained at the conclusion of this opinion, we decline to do so.

OAL never acted upon that transmittal; the evidentiary hearing the ALJ held, and that is the focus of this appeal, honed in on whether plaintiff is entitled to an accidental disability pension, not whether she is entitled to an ordinary disability pension. At the hearing the expert witnesses testified as to whether he believed plaintiff was permanently and totally disabled, but the majority and focus of the testimony concerned accidental disability. See supra note 1.

The first ALJ assigned to this matter conducted the evidentiary hearing and heard testimony from plaintiff and several experts on April 24, 2017; April 28, 2017; and May 10, 2017. Before rendering a decision, however, that ALJ left the OAL. Both parties consented to allow a second ALJ to review the transcripts of the evidentiary hearing. On May 21, 2018, based on this stipulated record, the second ALJ issued his opinion denying plaintiff's application for accidental disability retirement benefits. On June 12, 2018, the Secretary of the Board informed plaintiff's counsel that the Board had adopted the second ALJ's factual findings and decision.

II.

There are two types of disability retirement for police officers: ordinary disability and accidental disability. N.J.S.A. 43:16A-6; N.J.S.A. 43:16A-7. Typically, ordinary disability benefits are less generous than accidental

4

disability benefits. See Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 43 (2008) ("[A]n accidental disability retirement entitles a member to receive a higher level of benefits than those provided under an ordinary disability retirement." (citing Richardson v. Bd. of Trs., Police and Firemen's Ret. Sys., 192 N.J. 189, 194 (2007))).

Ordinary disability is available to a police officer under 55 years of age who has four or more years of service and who is permanently mentally or physically incapacitated and unable to perform his or her duties. N.J.S.A. 43:16A-6(1). There is no requirement that the officer's employment contributed to the disability. N.J.S.A. 43:16A-6(1)–(4).

Accidental disability requires a higher standard. To qualify for an accidental disability pension, an officer must be (1) permanently and totally disabled "as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties;" (2) the officer cannot cause the injury through willful negligence; and (3) the officer must be "mentally or physically incapacitated for the performance of his usual duty and of any other available duty." N.J.S.A. 43:16A-7(a)(1). Typically, the application for accidental disability must be filed within five years of the original traumatic

event, but the Board can consider applications filed outside of this timeline. Ibid.

We next consider the standard of review that applies to this appeal. An appellate court will only reverse a decision of an administrative agency if it is "arbitrary, capricious, or unreasonable, or if it is not supported by substantial credible evidence in the record as a whole." P.F. v. N.J. Div. of Developmental Disabilities, 139 N.J. 522, 529–30 (1995). Courts presume agency actions are valid and reasonable, and the burden is on the plaintiff to overcome these presumptions. Bergen Pines Cty. Hosp. v. N.J. Dep't of Human Servs., 96 N.J. 456, 477 (1984).

Generally,

> courts can intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or other state policy. Although sometimes phrased in terms of a search for arbitrary or unreasonable action, the judicial role is generally restricted to three inquiries: (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency bases its action; and (3) whether, in applying legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

6

[In re Musick, 143 N.J. 206, 216 (1996) (citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963))].

A reviewing court cannot substitute its own judgment in place of the agency judgment, even if the court would have reached a different result. In re Stallworth, 208 N.J. 182, 194 (2011) (citing In re Carter, 191 N.J. 474, 483 (2007)). Rather, when "the Appellate Division is satisfied after its review that the evidence and the inferences to be drawn therefrom support the agency head's decision, then it must affirm even if the court feels that it would have reached a different result itself." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588 (1988). This is particularly true when reviewing an issue related to an agency's special "expertise and superior knowledge of a particular field." Stallworth, 208 N.J. at 194–95 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)). Further, the weight given to expert testimony "is within the competence of the fact-finder." LaBracio Family P'ship v. 1239 Roosevelt Ave., Inc., 340 N.J. Super. 155, 165 (App. Div. 2001).

III.

Applying this standard of review to the matter before us, we conclude that the final agency decision is supported by substantial credible evidence. The ALJ made specific findings based on the testimony presented by plaintiff, her expert

witness, and the State's two expert witnesses and applied those findings to the statutory criteria for awarding an accidental disability pension. See Richardson, 192 N.J. at 212–13 (analyzing existing statutes and case law on accidental disability and creating a multi-pronged test).[2] Most notably, the ALJ found that neither the 2004 or 2007 work-related injuries directly caused plaintiff's disability.

## IV.

We next address the Board's contention that we should remand this case for the ALJ to address whether plaintiff is entitled to an ordinary disability

---

[2] Richardson set the test for officers to establish accidental disability:

> 1. that [the officer] is permanently and totally disabled;
> 2. as a direct result of a traumatic event that is
>     a. identifiable as to time and place,
>     b. undesigned and unexpected, and
>     c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
> 4. that the disability was not the result of the member's willful negligence; and
> 5. that the member is mentally or physically incapacitated from performing his usual or any other duty.
>
> [192 N.J. at 212–13.]

A-5280-17T1

pension in view of the Board's 2015 decision that plaintiff is no longer permanently disabled.

The regulations governing disability pensions provide that "[a]ll disability retirants may be required to undergo a medical examination each year for at least five years or for good cause thereafter by a physician designated by the System as of the anniversary date of their retirement, unless such examination requirement has been waived by the Board." N.J.A.C. 17:4-6.12(a). "Generally, for individuals whose disability has vanished or materially diminished, benefits cease when the retiree refuses to return to duty after the Board has so ordered." Cardinale v. Bd. of Trs., Police & Fireman's Ret. Sys., 458 N.J. Super. 260, 263 (App. Div. 2019).

In this instance, it does not appear the ALJ acknowledged the Board's 2015 determination that plaintiff was no longer disabled. The ALJ did not find that she was no longer disabled when he determined that plaintiff was not entitled to an accidental disability pension. Nor did the ALJ explicitly find that she was disabled, although the ALJ seems to have assumed, without making a formal finding, that she was entitled to an ordinary disability pension.

It is not clear to us why the Board's representative did not more clearly present arguments or evidence to support the Board's 2015 re-determination of

plaintiff's disability. At the hearing, the Board's representative elicited some testimony as to whether plaintiff was disabled, but the testimony centered on accidental disability. It also is not clear why the Board adopted the ALJ's findings and determination as a final agency decision appealable as of right if it believed that the ALJ had unfinished business to attend to.[3] In any event, our sole task in this appeal is to review the validity of the final agency decision referenced in the Board's June 12, 2018, letter that explains that the Board voted to adopt the ALJ's findings of fact and law. In these unusual circumstances, we do not believe the validity of the Board's 2015 determination is properly before us in this appeal brought by plaintiff. The Board is free to initiate a new OAL proceeding or take other appropriate action within its administrative discretion to address whether plaintiff is no longer permanently disabled and should no longer be receiving ordinary disability pension benefits.

    Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] The Board's June 12, 2018, letter to plaintiff's counsel states that the Board "voted to adopt the Initial Decision of [the] ALJ." (Emphasis added). The letter also instructs that, "[p]ursuant to the New Jersey Court Rules, you have a period of 45 days from the date of this notice to file an appeal with the Appellate Division from this final administrative determination of the Board of Trustees." (Emphasis added). So far as the record shows, the Board has not filed a cross appeal. Accordingly, we conclude that any future decision an ALJ may issue in this matter is not before us on this appeal.

A-5280-17T1